| ¡WHIPPLE, J. .
Plaintiff, Mortgage Electronic Registration Systems,. Inc., appeals the judgment of the trial court nullifying a purported *809 transfer of property upon which it had granted a mortgage and holding that the notice of lis pendens filed by the State of Louisiana outranked its mortgage. For the following reasons, we modify and affirm.
FACTS AND PROCEDURAL HISTORY
On August 20, 2001, the State of Louisiana instituted a forfeiture proceeding against Kemp J. Oubre and Martisa Henderson in the Nineteenth Judicial District Court, wherein the State sought, in part, forfeiture of immovable property owned by Oubre. Specifically, the State contended that Henderson had pled guilty to one felony count of money laundering of more than $100,000.00, in violation of LSA-R.S. 14:230, as a result of her receipt and transfer of fraudulently obtained Medicaid funds on behalf of her business, T & K Rehabilitation Services. The State further averred that its criminal investigation revealed that Henderson had used $117,439.13 of the illegally obtained Medicaid funds to construct a house located at 58867 Captain T. Harris Street in Plaque-mine, Louisiana, and that the house and property were listed in the name of Oubre, a former boyfriend of Henderson. Accordingly, pursuant to LSA-R.S. 46:437.1, et seq., the Medical Assistance Programs Integrity Law, the State sought an order of forfeiture of the home from Oubre, in that it was derived from illegally obtained Medicaid funds.
Oubre was served with a copy of the forfeiture petition on September 24, 2001. Thereafter, on October 8, 2001, Oubre executed a “Quitclaim Deed,” through which he transferred to Celeste Stewart-Bynum whatever “right, title, interest and claim” he had to the subject property for the stated consideration of $1.00. The quitclaim deed was recorded in the conveyance Lrecords of Iberville Parish the following day, October 9, 2001. On October 22, 2001, Bynum then borrowed $151,300.00 from Aegis Mortgage Corporation, and, as security for the note, executed a mortgage on the property in favor of Mortgage Electronic Registration Systems, Inc. (MERS). Despite the earlier quitclaim deed, Bynum and Oubre also executed an act of cash sale on October 22, 2001, in conjunction with the mortgage, with a stated consideration of $178,000.00. The act of cash sale and mortgage, however, were not immediately recorded in the mortgage and conveyance records.
On November 6, 2001, the State filed in the mortgage records of Iberville Parish a Notice of Lis Pendens, giving notice of its claim against the property located at 58867 Captain T. Harris Street in Plaquemine. See LSA-C.C.P. arts. 3751-3753. The notice of lis pendens contained the title, docket number and date of filing of the State’s forfeiture petition, as well as the State’s allegations regarding its right to forfeiture of the property at issue. In addition to listing the municipal address of the property, the notice of lis pendens also gave a full legal description of the property to which it claimed an interest.
On December 6, 2001, subsequent to the State’s filing of its notice of lis pendens, Aegis recorded the Oubre to Bynum act of cash sale and its mortgage in the conveyance and mortgage records of Iberville Parish, respectively.
Thereafter, on June 20, 2002, MERS filed a petition entitled “Suit on Note with Recognition of Mortgage,” naming Bynum as defendant. In its petition, MERS contended that Bynum had defaulted on the note and mortgage affecting the subject property, and it sought judgment in its favor in the amount of $151,071.64 and recognition of its mortgage.
*810 14Subsequently, the State, through the Attorney General, intervened in the matter, seeking to have the sale of the property from Oubre to Bynum declared null as a simulated sale and requesting that the Sheriff of Iberville Parish be ordered to hold any proceeds of any judicial sale until further order of the court regarding the ranking of the State’s and MERS’ claims to the property at issue.
The State’s intervention was tried on April 9, 2003. The evidence at the trial established that Bynum had been approached by Kenneth Bradford and Tyrone Dunn, who requested that she “help out” one of Dunn’s friends whose family was losing their home. According to By-num, Bradford and Dunn told her that she would be paid $5,000.00 to complete the transaction and that they would buy the house back from her within one year. Accordingly, Bynum executed the quitclaim deed and subsequently also executed an act of cash sale and mortgage. Bynum testified that a false W-2 and payroll check were presented to Aegis to obtain the mortgage, that she never had access to the house she had allegedly acquired, that she received $5,000.00 for her actions in executing the documents and that she had no knowledge of what happened to the rest of the loan money.
The testimony at the trial of the intervention also established that a contradictory hearing had taken place in the forfeiture proceeding, and judgment had been rendered in favor of the State with regard to the funds utilized in the construction of the home on Oubre’s property.
At the close of the trial, the trial court found as a fact that the alleged sale of the property was fraudulent and, thus, declared the sale null and void. The court further ruled that the State’s notice of lis pendens outranked MERS’ mortgage. Accordingly, the court rendered judgment declaring the quitclaim deed and act of cash sale between Oubre and Bynum null and | ^ordering that the notice of lis pen-dens filed by the State on November 6, 2001 outranked the mortgage filed by Aegis on December 6, 2001.
From this judgment, MERS appeals, contending that the trial court erred: (1) in failing to hold that the State’s forfeiture and lien ranking rights under LSA-R.S. 46:437.6 and 46:437.7 are subject to the Public Records Doctrine pursuant to LSA-R.S. 46:437.6(B), which requires the State to file a notice of lis pendens under the Louisiana Civil Code; (2) in failing to hold that MERS’ mortgage outranked the State’s notice of lis pendens where Oubre transferred the property to Bynum prior to the State recording its lis pendens and the lis pendens failed to name Bynum, the record owner of the property; and (3) in holding that the language of LSA-R.S. 46:437.7(0 or LSA-R.S. 46:437.9(0 provides an exception to the Public Records Doctrine and allows the State to void a mortgage against property acquired by a mortgagee who relied upon the public records.[1]
*811 DISCUSSION
In 1997, the Louisiana Legislature enacted the Medical Assistance Programs Integrity Law, LSA-R.S. 46:437.1 et seq., to combat and prevent fraud and abuse committed by health care providers participating in medical assistance programs. LSA-R.S. 46:437.2. The Law grants the State the right to pursue damages, penalties and other remedies from health care providers and others who through fraud obtain payments from medical assistance programs to which they are not entitled. See LSA-R.S. 46:437.2(B). 1 ^Pursuant to LSA-R.S. 46:437.7, a court may order forfeiture of property by the health care provider or other person where the property was derived directly or indirectly from gross proceeds traceable to payments obtained fraudulently from a medical assistance program.[2] Additionally, if the State can demonstrate that property was transferred to a third party to avoid paying of recovery, or in an attempt to protect the property from forfeiture, the court may order the third party to forfeit the transferred property.[3] LSA-R.S. 46:437.7(A)(2).
The Medical Assistance Programs Integrity Law also grants the State a privilege against all property owned by the health care provider or other person from whom recovery is due. However, the privilege shall be effective as to third parties only under certain circumstances, as follows:
A. Recovery shall be granted a privilege under state law as to all property owned by the health care provider or other person from whom recovery is due and shall be effective as to third parties only if notice of pendency, lis pendens, is placed on the property, if recorded and reinscribed in accordance with Civil Code Articles 3320 through 3327, or if the conditions of Subsection C of this Section are applicable.
[[Image here]]
C. If property is transferred to a third party to avoid paying of recovery, or in an attempt to protect the property from forfeiture, the privilege provided in Subsection A of this Section shall rank ahead of any. other privilege, mortgage, or secured interest on the transferred property obtained or possessed by the person who obtains an ownership interest in the transferred property.
LSA-R.S. 46:437.9.
|7In support of its position at the trial of its intervention that its privilege outranked MERS’ mortgage, the State argued that its notice of lis pendens was recorded in accordance with Civil Code articles 3320 through 3327 and was filed in the mortgage records prior to MERS’ recordation of its mortgage. Additionally, the State argued that the conditions of Subsection (C) of LSA-R.S. 46:437.9 were also met in that the property had been transferred to a third person (Bynum) in an attempt to protect the property from forfeiture and a mortgage had then been placed on the property. Thus, the State contended, its *812 privilege outranked the mortgage placed on the transferred property by Bynum. In ruling in favor of the State and finding that the State’s privilege outranked the MERS mortgage, the trial court held that the Medical Assistance Programs Integrity Law, as newer legislation, superceded the Public Records Doctrine.
On appeal, MERS contends that the trial court erred in ruling that the State’s privilege outranked its mortgage because: (1) LSA-R.S. 46:437.9 does not contain any language providing that the State’s forfeiture and privilege rights are not subject to the Public Records Doctrine; (2) the State’s notice of lis pendens was defective, and thus, ineffective as to MERS, in that it did not list the record owner of the property; and (3) Subsection (C) of LSA-R.S. 46:437.9 is inapplicable under the facts herein in that the mortgage over which the State seeks priority ranking was not “obtained or possessed” by the person who obtained an ownership interest in the transferred property (ie., Bynum), but instead was “obtained or possessed” by an innocent third party who relied upon the public records in granting the mortgage (ie., MERS).
Pursuant to Subsection (A) of LSA-R.S. 46:437.9, the State’s privilege is effective as to third parties only if (1) a notice of lis pendens is ^properly filed, or the conditions of Subsection (C) are applicable. The purpose of a notice of lis pen-dens is to give effective notice to third persons of the pendency of an action affecting title to, or asserting a mortgage or lien on, immovable property. LSA-C.C.P. art. 3751; Campbell v. Melton, 2001-2578, p. 5 n. 4 (La.5/14/02), 817 So.2d 69, 74 n. 4; L.E.C., Inc. v. Collins, 332 So.2d 565, 568 (La.App. 1st Cir.1976). The recordation of the notice of lis pendens makes the outcome of the suit of which notice is given binding on third parties. Campbell, 2001-2578 at p. 5 n. 4, 817 So.2d at 74 n. 4.
Subsection (A) of LSA-R.S. 46:437.9 clearly states that the State’s notice of lis pendens must be recorded in accordance with Civil Code articles 3320 through 3327.[4] Louisiana Civil Code article 3320 provides that a mortgage, privilege or other encumbrance is given the effect of re-cordation when it is filed with the recorder of mortgages. Moreover, LSA-C.C. art. 3321(3) provides that to be given the effect of recordation, a document filed to create a legal privilege “must be in the form prescribed by the law for the establishment of the encumbrance.” Louisiana Code of Civil Procedure article 3751 provides that the pendency of an action affecting the title to, or asserting a mortgage or privilege on, immovable property does not constitute notice to a third person unless a notice of pendency of the action (ie., a notice of lis pendens) is filed or recorded as required by LSA-C.C.P. art. 3752. The form prescribed by law for a notice of lis pendens is found in LSA-C.C.P. art. 3752, which likewise requires that the notice of lis pendens be filed in the mortgage office of the parish where the property is located 19and which provides that the notice of lis pendens has effect “from the time of the filing for recordation.”
Clearly, these codal provisions, LSA-C.C. arts. 3320 and 3321 and LSA-C.C.P. arts. 3751 and 3752, embody the concept of the Public Records Doctrine. The Public Records Doctrine provides that no written instrument affecting immovable *813 property shall be binding on or affect third persons “unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated.” See LSA-R.S. 9:2721(A). The Public Records Doctrine is essentially a negative doctrine declaring that what is not recorded is not effective except between the parties, and that a third party in purchasing, or otherwise dealing with, immovable property is entitled to rely upon the absence from the public records of any unrecorded interest in the property. LSA-R.S. 9:2722; Hospital Service District No. 2 of Parish of Lafourche v. Community Bank of Lafourche, 2000-1035, p. 10 n. 9 (La.App. 1st Cir.6/22/01), 790 So.2d 688, 696 n. 9.
Accordingly, we conclude that under the provisions of LSA-R.S. 46:4S7.9(A), where the State’s privilege is dependent upon its filing of a notice of lis pendens, the ranking of its privilege is clearly subject to the Public Records Doctrine, but the State’s privilege may outrank a prior recorded privilege, mortgage or security interest where the conditions of Subsection (C) of LSA-R.S. 46:437.9 are met. Thus, we next consider MERS’ argument that the State’s notice of lis pendens was ineffective in that it failed to name the record owner of the property.
As stated above, LSA-C.C.P. art. 3752 prescribes the form for a notice of lis pendens, and it states, in pertinent part, as follows:
The notice referred to in Article 3751 [notice of lis pendens] shall be in writing, signed by the plaintiff, defendant, or other party to the action or proceeding who desires to have the notice 1 inrecorded, or by a counsel of record for such party, showing the name of the court in which the action or proceeding has been filed, the title, docket number, date of filing, and object thereof, and the description of the property sought to be affected thereby.
The sole purpose of the notice of lis pendens is to inform the general public of the precise property involved in litigation which affects the title to the property or asserts privilege on that property. L.E.C., Inc., 332 So.2d at 568. Given that the purpose of a notice of lis pendens is to inform the public of the precise property to which a claim or privilege has been asserted, LSA-C.C.P. art. 3752 understandably requires that the notice of lis pendens contain “the description of the property sought to be affected thereby.” Notably absent from the requirements of a notice of lis pendens as set forth in article 3752, however, is the name of the record owner of the property.
In support of its contention that the State’s notice of lis pendens was ineffective as to third parties, MERS relies upon the Third Circuit Court of Appeal opinion of Cardinal Federal Savings Bank v. Corporate Towers Partners, Ltd., 629 So.2d 462, 464-465 (La.App. 3rd Cir.1993), writ denied, 94-0071 (La.3/11/94), 634 So.2d 396. In that ease, the court was faced with the question of ranking of liens, | n notices of lis pendens and a subsequently granted mortgage. Cardinal Federal Savings Bank, 629 So.2d at 463. In affirming the trial court’s conclusion that the mortgage outranked the prior recorded liens, the court of appeal held that a lien must be perfected in the name of the true owner of the subject property to be effective against third parties. Cardinal Federal Savings Bank, 629 So.2d at 464. With regard to the ranking of the mortgage and the prior recorded notices of lis pendens, the court of appeal also noted that the notices of lis pendens did not list the proper name of the owner of the property and likewise concluded that notices of lis pendens were ineffective against the mortgage holder’s *814 claim. Cardinal Federal Savings Bank, 629 So.2d at 464-465. However, in reaching its conclusion, the court of appeal also stated that there is no law or jurisprudence that considers the suit index the “public records” for purposes of title searches and that the notice of lis pendens had been “improperly filed.” Cardinal Federal Savings Bank, 629 So.2d at 464-465. Thus, it is unclear from our reading of the opinion whether the court of appeal concluded that the notices of lis pendens at issue therein were “improperly filed” because they failed to name the true owner of the property at issue or because they were filed in the suit records rather than in the mortgage records as required by LSA-C.C.P. art. 3752.
Nonetheless, we note that the Third Circuit in reaching its opinion in Cardinal Federal Savings Bank did not cite to LSA-C.C.P. art. 3752, which specifically delineates the requirements for a notice of lis pendens. As stated above, LSA-C.C.P. art. 3752, while requiring a description of the property at issue, simply does not require that the record owner be listed in the notice of lis pendens. Accordingly, to the extent that Cardinal Federal Savings Bank stands for the proposition that a notice of lis pendens must contain the name of the record owner of the property to be effective against third parties, we decline to follow it.
In the instant case, the State’s notice of lis pendens complied with all of the requirements set forth in LSA-C.C.P. art. 3752 and was filed in accordance with the provisions of LSA-C.C. art. 3320, as required by LSA-R.S. 46:437.9(A). Accordingly, we conclude that the State’s notice of lis pendens was effective as to third parties from the date on which it was recorded in the mortgage records for the Parish of Iberville, i.e., on November 6, 2001. MERS’ mortgage was not recorded in the mortgage [^records until December 6, 2001. Rank of a creditor’s claim is established by the priority of its registry in the appropriate public record. LSA-C.C. art. 3308; LSA-R.S. 9:2721; United Credit Plan of Gretna v. Pullen, 448 So.2d 95, 99 (La.1984). Thus, the trial court properly held that the State’s privilege granted pursuant to LSA-R.S. 46:437.9 outranked MERS’ mortgage. We note that the language of the judgment provides that the “Lis Pendens” filed by the State outranked MERS’ mortgage. Technically, it is the privilege granted by LSA-R.S. 46:437.9, which is effective as to third parties upon the filing of the lis pendens, that outranks MERS’ mortgage. For purposes of clarity, we modify the trial court’s judgment accordingly.
Accordingly, because we find no error in the trial court’s conclusion that the State’s notice of lis pendens was valid and that its privilege outranked MERS’ mortgage, we pretermit consideration of MERS’ argument that the provisions of Subsection (C) are inapplicable to the facts herein.
DECREE
For the above and foregoing reasons, the portion of the April 21, 2003 judgment of the trial court addressing the issue of ranking is modified to provide:
IT IS FURTHER ORDERED that the privilege granted to the State of Louisiana pursuant to LSA-R.S. 46:437.9, which became effective as to third parties upon the filing of the notice of lis pendens by the State of Louisiana on November 6, 2001, with the Iberville Parish Clerk of Court’s Office in Mortgage Book 363, Entry 019, shall outrank the mortgage in the sum of $151,300.00 filed by Aegis Mortgage Corp. (successor in interest being plaintiff Mortgage Electronic Registration Systems, Inc.) on December 6, 2001, with the Iberville *815 Parish Clerk of Court’s Office in Mortgage Book 364, Entry 143.”
In all other respects, the judgment is affirmed. Costs of this appeal are assessed against Mortgage Electronic Registration Systems, Inc.
MODIFIED AND AFFIRMED.

. For purposes of determining whether this matter is properly before us on appeal, we note that pursuant to LSA-C.C.P. art. 1915(A)(4), a partial final judgment may be rendered by the trial court where the court signs a judgment on an incidental demand, when the principal and incidental demand have been tried separately. See also LSA-C.C.P. art. 1038. Although the trial court designated the judgment at issue as final for purposes of immediate appeal, we note that a partial final judgment rendered pursuant to LSA-C.C.P. art. 1915(A) is appealable without being so designated. LSA-C.C.P. art. 1915, Comment — 1999; Motorola, Inc. v. Associated Indemnity Corporation, 2002-0716, pp. 10-11 (La.App. 1st Cir.4/30/03), 867 So.2d 715, 720-21.

. Prior to forfeiture of the property, the State, through the secretary of the Department of Health and Hospitals or the attorney general, must prove by clear and convincing evidence at a contradictory hearing that the property is subject to forfeiture under the Medical Assistance Programs Integrity Law. LSA-R.S. 46:437.7(B).

. If the property is transferred to another person within six months prior to or after the occurrence of a violation for which recovery is due or within six months prior to or after the institution of a criminal, civil or departmental investigation or proceeding, such a transfer shall be prima facie evidence that the transfer was to avoid paying recovery or an attempt to protect the property from forfeiture. LSA-R.S. 46:437.7(C).

. Louisiana Revised Statute 46:437.6(B) also provides that the State "may place a notice of pendency of action, lis pendens, on the property of a health care provider or other person during the pendency of a criminal, civil, or departmental proceeding” pursuant to "Code of Civil Procedure Articles 3751 through 3753.”