# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-885


**GLORIA G. TAYLOR**

**VERSUS**

**CONLEY M. FUSELIER**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. C-2003-521
HONORABLE JOHN P. NAVARRE, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE


**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.


**REVERSED AND RENDERED.**


**Errol David Deshotels**
**Deshotels, Mouser & Deshotels**
**317 West Sixth Avenue**
**Oberlin, LA 70655**
**Telephone: (337) 639-4309**
**COUNSEL FOR:**
    **Defendant/Appellee - Conley M. Fuselier**

**Romelzy Willis, Jr.**
**P. O. Box 1368**
**Oberlin, LA 70655**
**Telephone: (337) 639-4600**
**COUNSEL FOR:**
    **Plaintiff/Appellant - Gloria G. Taylor**

THIBODEAUX, Chief Judge.

Plaintiff-Appellant, Gloria Taylor, sought rescission of her agreement to purchase land from Defendant, Conley Fuselier, because she discovered after the sale that Mr. Fuselier had sold a portion of the property to the town of Oberlin before selling the lot to her. She argued she had been evicted from that portion of the lot. The trial court denied Ms. Taylor's request for return of the purchase price of the property, finding that the portion from which she had been evicted was insignificant in relation to the whole. We reverse the judgment of the trial court because, although the relative size of the portion sold to Oberlin compared to the entire lot may not be large, the significant location and use of that portion deprived Ms. Taylor of her full enjoyment of the property she believed she had purchased.

I.

**ISSUE**

We must consider whether the trial court was correct to award Ms. Taylor only a diminution of her purchase price, or whether she is entitled to full rescission of the purchase price of the property.

II.

**FACTS**

On October 2, 2002, Gloria Taylor signed a cash warranty deed for the purchase of a tract of land from Conley Fuselier in the town of Oberlin. The tract she purchased measured 150 feet by 100 feet. She specifically chose a corner lot, she testified, because she thought it would look better when she built a house on it, and believed a corner lot would ultimately have a higher resale value. Ms. Taylor stated

that she told Mr. Fuselier her reasons for choosing the corner lot. Ms. Taylor installed a culvert, which cost $167.00, and planted trees, which cost $90.00.

After she planted the trees in January 2003, she noticed construction on part of her land, and called Mr. Fuselier to find out what was happening. She testified Mr. Fuselier told her that before he had sold her the lot, he had sold a 20 square foot portion of it to the Town of Oberlin to construct a sewerage pumping station. Ms. Taylor testified that, when completed, the sewerage pumping station included a seven-foot-high hurricane fence with barbed wire at the top, measuring ten by fifteen feet. Inside the fence, the pumping apparatus included a blinking red light. Ms. Taylor and her next door neighbor, Donette Taylor, both testified that the station was aesthetically unappealing and also caused a noisome odor.

Ms. Taylor filed a Petition to Rescind the Sale of Immovable Property. After a trial in March 2004, the court found that the section of land sold to Oberlin was inconsequential in relation to the whole and awarded Ms. Taylor a reduction in price of $266.00, plus an additional $300.00 to erect a privacy fence around the station. Ms. Taylor appeals the judgment of the trial court, arguing that the court erred in finding she was not entitled to rescission because the tract of land sold to the city was inconsequential in relation to the whole.

III.

**LAW AND DISCUSSION**

Mr. Fuselier claims that because there is no evidence contradicting Ms. Taylor's clear title search, we cannot find that a prior sale occurred. He argues that Ms. Taylor's parol evidence is insufficient to establish that a sale to Oberlin occurred and, if it occurred, that it was recorded. In general, a court may not rely on parol evidence to define an agreement regarding the sale of real property, as "[t]he

2

designation of the sale should properly be based exclusively on the written act of sale." *Strange v. Kennard*, 99-406, p. 4 (La.App. 1 Cir. 3/31/00), 763 So.2d 710, 712. Ms. Taylor, however, did not attack the validity of any purported sale to Oberlin, nor did she dispute any instrument transferring property from Mr. Fuselier to Oberlin. The issue, in other words, is not the contents of the agreement between Mr. Fuselier and Oberlin. Moreover, her testimony that Mr. Fuselier admitted the prior sale of the portion of the lot to Oberlin went uncontradicted.

Mr. Fuselier further argues that because an instrument involving immovable property does not affect third parties until it has been recorded, and there is no record of the sale to Oberlin, Ms. Taylor's rights in the property trump those of Oberlin to the property; therefore, she may rightfully evict the municipality of Oberlin. La.Civ.Code art. 1839; *see also King v. Strohe*, 95-656 (La.App. 3 Cir. 5/8/96), 673 So.2d 1329 (finding that agreements involving immovable property affect third parties only after they are filed for recordation and that they are a nullity as to third parties until that time). However, Mr. Fuselier's attempt to deflect the legal conflict onto Oberlin does not extinguish Ms. Taylor's ability to obtain rescission on grounds of eviction. Ms. Taylor had a title search performed at her request and her expense. The title search did not provide any information that would lead her to suspect that she was not purchasing the entire lot Mr. Fuselier offered for sale. Ms. Taylor was entitled to rely on the results of her title search. La.R.S. 9:2721; *see also Mortgage Elec. Registration Sys., Inc. v. Bynum*, 03-1671 (La.App. 1 Cir. 5/14/04), 879 So.2d 807, *writ denied*, 04-1926 (La. 11/15/04), 887 So.2d 479 (noting that a third party purchasing immovable property is entitled to rely on the absence from public records of any unrecorded interest in the property). Mr. Fuselier is correct that the lack of record of the sale does not adversely impact Ms. Taylor's title

3

to the property. Whether or not Ms. Taylor had the option of taking action against Oberlin does not alter Ms. Taylor's claim based on eviction vis à vis Mr. Fuselier.

Louisiana Civil Code Article 2500 states in part that "[t]he seller warrants the buyer against eviction, which is the buyer's loss of . . . part of the thing sold because of a third person's right that existed at the time of the sale." However, La.Civ.Code art. 2521 states that "[t]he seller owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such things." Ms. Taylor testified that, at her request and expense, a deputy clerk in the clerk's office performed a title search. The title search did not reveal the prior transfer of the property to Oberlin, leading Ms. Taylor to believe that she was purchasing the full 150 x 100 foot lot. Because Ms. Taylor was entitled to rely on the results of her title search, and had no reason to suspect the title to the property was not as it appeared to be, Mr. Fuselier continues to owe her the warranties contained in their contract.

Mr. Fuselier cites *Collins v. Slocum*, 284 So.2d 98, 100 (La.App. 3 Cir. 1973), for its statement that "all persons have constructive notice of the existence and contents of recorded instruments affecting immovable property," and then explains that a later case, *Collins v. Slocum*, 317 So.2d 672, 681 (La.App. 3 Cir.), *writs denied,* 321 So.2d 362, 363, 364 (La.1975) modified this statement by finding that "a title examination prior to purchase [does not] defeat[] the warranty action." He argues that this is an unresolved point of law. In those cases, the defendant argued that Collins could not rescind the sale of property and recover the purchase price because he had constructive knowledge of the existence of a servitude on the property, since the servitude had been recorded. The trial court rejected this argument, and the third circuit noted on appeal that the record supported this finding. Although Collins himself did not have the title examined before purchasing the property, the Savings

4

& Loan from which Collins borrowed money to finance construction of a home on the property had the title examined at Collins' expense. Nevertheless, the third circuit concluded there was no evidence indicating Collins had either actual or constructive knowledge of the existence of the servitude on the property, and that therefore the trial court correctly awarded Collins the purchase price of the property.

The key distinction, however, is that in *Collins*, the servitude had been recorded. While the title had been examined, and the title reflected the existence of the servitude, the person hired to examine the title failed to render an accurate opinion as to the impact of the servitude on title to the property. In contrast, Ms. Taylor had the title examined, and the title did not indicate the transfer to Oberlin.

Louisiana Civil Code Article 2511 states: "When the buyer is evicted from only a part of the thing sold, he may obtain rescission of the sale if he would not have bought the thing without that part. If the sale is not rescinded, the buyer is entitled to a diminution of the price in the proportion that the value of the part lost bears to the value of the whole at the time of the sale." *See also* La.Civ.Code art. 2506 ("A buyer who avails himself of the warranty against eviction may recover from the seller the price he paid, the value of any fruits he had to return to the third person who evicted him, and also other damages sustained because of the eviction with the exception of any increase in value of the thing lost").

Ms. Taylor testified she would not have purchased the land from Mr. Fuselier had she known he had already sold a portion to the town of Oberlin. Although Mr. Fuselier implies this is merely self-serving testimony, there is nothing to suggest that this assertion is untrue. In fact, she explained to Mr. Fuselier that she wanted a corner lot because she wished either to build a home or to move a trailer onto the property, and she believed that a home would look more appealing on a corner lot, benefit from better road access, and have an increased resale value. She

5

paid an extra $2,000.00 for the corner lot. Furthermore, she declined Mr. Fuselier's offer of additional property to compensate for the portion that later turned out to belong to Oberlin. The record makes clear that Ms. Taylor specifically wanted the corner lot, and nothing else would do.

While the trial court considered only the relative proportion of the area belonging to Oberlin compared to the remaining parcel Ms. Taylor owned, it failed to consider that the piece owned by Oberlin is, as it were, on the corner of this corner lot. In light of Ms. Taylor's desire for the corner lot, the placement of the sewerage lift station is significant. Furthermore, the trial court should have considered more than just the size of the piece belonging to Oberlin. The testimony at trial showed that the apparatus is aesthetically unappealing. It includes a blinking light and has produced a troublesome and noxious odor.

Although the physical size of Oberlin's portion may not be large, it has clearly impinged on Ms. Taylor's enjoyment of the property. Furthermore, Mr. Fuselier attempts to argue that the station is actually a benefit, since lots with sewerage access are more valuable than lots which require installation of a septic system. Ms. Taylor, however, as the buyer of the property, has the right to make that judgment. In fact, she testified that, given the choice, she would prefer a concealed septic system, notwithstanding the convenience of the sewerage lift station in her front yard.

The first part of La.Civ.Code art. 2511 states that if the buyer shows she would not have bought the property had she known of the defect, she may obtain rescission. Because Ms. Taylor has clearly shown she would not have purchased the property had she known that Oberlin owned the front corner of the lot, there was no legal justification to deny rescission of the sale and opt instead for diminution of the price.

IV.

## **CONCLUSION**

For the above reasons, the judgment of the trial court is reversed. Costs of appeal are assessed to appellee, Conley Fuselier.

**REVERSED AND RENDERED**.