STEWART, J.
[¡.The plaintiffs, Claude Edward Sparks and Linda G. Sparks (“the Sparks”), appeal a summary judgment dismissing their claims of negligence and breach of a title insurance contract against the defendants, United Title & Abstract, LLC, (“United Title”), and First American Title Insurance Company (“First American”). The issue presented is the same as that addressed in Thomas v. Lewis, 475 So.2d 52 (La.App. 2d Cir.1985), namely, “whether the exercise of an option to renew in a recorded lease is required to be recorded to have effect as to third party purchasers of the property.” Id., at 54. We now |sreaffirm our prior decision and hold that the exercise of an option to renew contained in a recorded lease need not be recorded to be effective against third parties. Accordingly, we affirm the trial court’s judgment.
FACTS
On June 5, 2009, the Sparks filed suit against United Title and First American. According to the petition, the Sparks had purchased tracts of land totaling 10 acres in Caddo Parish from Glenda Fay Smith Eppes, Wilbert Leon Smith, Gary Wayne Smith, Theresa Lyn Smith Raymond, and David Ray Smith (referred to collectively as “the sellers”). The Sparks and the sellers had agreed that the Sparks would receive 75% of the mineral rights, with 25% reserved by the sellers. However, the deed prepared by United Title stated that the sellers reserved 75% of the mineral rights. The petition further alleged that XTO Energy, Inc., (“XTO”), offered the Sparks $20,000 per acre to lease the mineral rights. However, when the title examination by XTO revealed that the Sparks had only a 25% interest in the mineral rights, XTO refused to enter the lease. The Sparks contacted United Title, which prepared and filed an Act of Correction on November 7, 2008. By then, XTO was no longer |4leasing mineral interests, and the Sparks were deprived of $150,000, the amount they would have received for their 75% ownership of the mineral rights over the 10 acres if XTO had paid $20,000 per acre for a lease. The Sparks claimed this loss as damages due to United Title’s negligence in preparing the deed and First American’s breach of the title insurance policy, which allegedly contained the same error.
After answering, United Title and First American filed an exception of no cause of action on the basis that the Sparks’ petition really alleged negligent interference with contractual relations, which they asserted is not recognized as a cause of action under the law of this state. The defendants also filed a motion for summary judgment asserting that the Sparks would not be able to meet the evidentiary burden of proving that the error in the reservation of mineral rights caused their damages. They asserted that the only proof of loss was Claude Sparks’ unsubstantiated allegations regarding XTO’s offer.
Shortly after filing the motion for summary judgment, the defendants supplemented the motion to assert that the Sparks had sustained no damages due to the fact that they had no mineral rights to lease to XTO. At the time of the Sparks’ purchase of the 10 acres, |fithe mineral rights were subject to a recorded mineral lease granted by the sellers in favor of St. Mary Land & Exploration Co., (“St. Mary”), on August 22, 2005, which is here *304 after referred to as the “St. Mary lease.” Though the St. Mary lease had a primary term of three years and was to expire on August 22, 2008, it included an option for the lessee (St.Mary) to renew for an additional two years by payment of an additional bonus of two-thirds the original bonus before the end of the primary term. St. Mary exercised the option to renew on March 31, 2008, by paying the additional bonus payment to the sellers. Therefore, the lease was extended for an additional two years until August 22, 2010. To support the motion for summary judgment, the defendants offered the affidavit of Steve Causey, St. Mary’s senior landman who exercised the option to extend the lease, a copy of the letter Causey sent to the sellers on March 31, 2008, regarding the extension of the lease, and a copy of the bonus check paid to the sellers for the lease extension.
In opposing the motion for summary judgment, the Sparks offered the affidavit of Teresa Mercer, who had spoken with Claude Sparks about leasing his mineral interests on behalf of XTO and who discovered the error in the reservation of mineral rights recited in the Indeed. Mercer’s affidavit also stated that her title examination revealed “an old lease which had expired earlier in 2008” and that there were no recorded extensions or renewals of the lease. The Sparks asserted that because the extension of the St. Mary lease was not recorded, it was not effective against them or XTO.
On January 27, 2010, the trial court ruled in favor of the defendants on their motion for summary judgment. The trial court’s reasons stated that the St. Mary lease, which was recorded in the public records, included an extension provision. Just as there is no requirement that notice of production must be recorded to extend a lease, there is no requirement that an automatic extension under the lease be noticed in the public records. With a “modicum of investigation,” XTO should have discovered the extension provision, which provided notice of a potential claim against the property, and the fact that the St. Mary lease had been extended. Citing La. R.S. 9:2721(C) and referring to Thomas, supra, the trial court concluded that the Sparks could not have entered a mineral lease with XTO because the property was already subject to the recorded St. Mary lease. Accordingly, the Sparks would not be able to prove that the 17error attributed to United Title and First American caused them damages.
Because it granted the motion for summary judgment, the trial court did not address the defendants’ peremptory exception of no cause of action. Judgment dismissing the Sparks’ claims was rendered on February 10, 2010. The Sparks now appeal.
DISCUSSION
As in all summary judgment matters, we conduct a de novo review on appeal. Town of Haynesville, Inc. v. Entergy Corp., 36,519 (La.App.2d Cir.1/31/03), 840 So.2d 597, mit denied, 2003-0627 (La.6/6/03), 845 So.2d 1090; Green v. State Farm General Ins. Co., 35,775 (La.App.2d Cir.4/23/02), 835 So.2d 2. Summary judgment is appropriate when the pleadings, answers to interrogatories, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966(B).
The Sparks argue that the trial court erred in granting summary judgment and in following Thomas, supra. They assert that Thomas, supra, is inconsistent with McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909), at odds with the Louisiana *305 Public Records Doctrine in general, and not followed by the fourth circuit. The Sparks conclude that Thomas, supra, should be overruled and the summary judgment reversed. We disagree.
In Thomas, supra, the plaintiffs, who were the owners of a shopping center, sought the eviction of the defendants, who were tenants. The defendants had leased space from the shopping center’s prior owners. The lease, which included options to renew for additional terms, was recorded. The option to renew was exercised prior to the purchase of the shopping center by the plaintiffs, but renewal of the lease was not reflected in the public records. As such, the plaintiffs asserted that the defendants did not have a valid lease and that they were not bound as a third party purchaser by the unrecorded extension. This court affirmed the trial court’s judgment enforcing the lease against the plaintiffs.
The opinion addressed the public records doctrine as follows:
On the basis of the public records doctrine, third persons need only to look to the public records to determine adverse claims. McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909). All persons are held to have constructive notice of the existence and contents of recorded instruments affecting immovable property. Where a recorded instrument has language that fairly puts a third 19person on inquiry as to the title and he does not avail himself of the means and facilities at hand to obtain knowledge of the true facts, he is to be considered as having bought at his own peril. [Citations omitted.] When one is put on inquiry as to title, availing one’s self of “means and facilities at hand” requires an examination of any necessary public records, but not a wide ranging search of unrecorded documents. [Citation omitted.]
Id., at 54. The court then found that the public records included a valid recorded lease containing an option to renew; that even though its primary term had expired, the lease was mentioned in the documents by which the plaintiffs acquired the shopping center; and that based on these facts, the plaintiffs were put on notice that the lease remained in effect after its primary term. Thus, the court held that “the exercise of an option to renew under a recorded lease need not be recorded in order to have effect against third persons” as the “option to renew puts the purchaser on notice of a potential claim against the property.” Id., at 55-56.
The foundation of the Thomas opinion is that third persons need only look to the public records to determine adverse claims. As expressed in McDuffie, supra, unrecorded interests affecting immovable property shall be null and void except between the parties. In Thomas, supra, as in this case, the public records disclosed |10the lease affecting the immovable property. Neither Thomas, supra, nor this matter involves unrecorded interests. By looking to the public records, the Sparks, and later XTO, could have discovered the lease and the fact that it included an option to renew. Thus, the adverse claim against the property was determinable from the public records.
The Thomas opinion also discussed Julius Gindi and Sons, Inc. v. E.J.W. Enterprises, Inc., 438 So.2d 594 (La.App. 4th Cir.1983), a case relied upon by the Sparks. In Thomas, supra, this court specifically disapproved the Gindi holding to the extent it conflicted with the Thomas holding. The fourth circuit in both Gindi, supra, and Avenue Plaza, L.L.C. v. Falgoust, 94-2491 (La.App. 4th Cir.4/26/95), 654 So.2d 838, writ denied, 95-1302 (La.6/30/95), 657 So.2d 1040, reached conclusions contrary to that in Thomas, sup *306 ra, by holding that the exercise of an option to renew must be recorded to affect a third party. While we recognize the disagreement, we find no basis to change our prior holding in Thomas, supra, and find that it is fully supported by the law of registry.
La. R.S. 9:2721(0 states:
C. Anyone who acquires immovable property in this state, whether by sale, sheriffs sale, giving in | T1payment, or in any other manner, which property is subject to a recorded lease agreement that is not divested by the acquisition, shall take the property subject to all of the provisions of the lease, including any provision for payment of a commission to a leasing agent or other third party, provided that the lease was recorded prior to the recordation of the document which establishes the rights of the person who acquires the property. Such document shall include but is not limited to a mortgage, option to purchase, or other writing.
Upon acquiring the immovable property that was the subject of the recorded St. Mary lease, the Sparks took the property subject to all the provisions in the lease. The St. Mary lease included an option for the lessee to renew the lease for an additional two years by payment of an additional bonus before the end of the primary term. As provided in La. R.S. 9:2721(C), the Sparks acquired the property subject to the renewal provision in the recorded lease.
Even if St. Mary had not yet acted upon the option to renew at the time the Sparks acquired the property, it could have done so at any time prior to the expiration of the lease’s primary term on August 22, 2008, thereby binding the Sparks for an additional two years and preventing them from taking advantage of XTO’s offer. Here, though, St. Mary had exercised the option to renew on March 31, 2008, prior to the sale of the property to the Sparks. Upon acquiring 112the property through the sale, the Sparks were bound to recognize the rights under the recorded St. Mary lease and were no longer third persons as to that lease. As explained in La. C.C. art. 3343, “A person who by contract assumes an obligation or is bound by contract to recognize a right is not a third person with respect to the obligation or right or to the instrument creating or establishing it.” Moreover, the cash sale deed evidencing the Sparks’ purchase of the acreage provided that the sale was “[sjubject to any restrictions, easements, and servitudes of record.” The St. Mary lease was clearly a restriction on the property at the time of the sale.
What is most significant for this matter is that the exercise of the option to renew included in the recorded lease need not be noticed in the public records to be effective as to third persons. La. C.C. art. 3339, enacted by Acts 2005, No. 169, § 1, effective July 1, 2006, as part of the legislative revision and restatement of the law of registry, states:
A matter of capacity or authority, the occurrence of a suspensive or a resoluto-ry condition, the exercise of an option or right of first refusal, a tacit acceptance, a termination of rights that depends upon the occurrence of a condition, and a similar matter pertaining to rights and obligations evidenced by a recorded instrument are effective |1Bas to a third person although not evidenced of record.
The option to renew was evidenced by the recorded St. Mary lease; thus, pursuant to La. C.C. art. 3339, the exercise of the option to renew need not be evidenced of record to be effective as to a third person. Article 3339 reflects the Thomas decision by recognizing that a recorded document that contains an option, such as an option *307 to renew a lease, suffices to put third persons on notice of a potential adverse claim against the property arising from the possible exercise of the option.
The St. Mary lease was recorded and in effect when the Sparks purchased the property. The Sparks acquired the property subject to the provisions of the recorded St. Mary lease, including the option to renew for an additional two years. Moreover, the option to renew included in the recorded lease sufficed as notice of the possibility that the lease had been or would be extended. As discussed, the exercise of the option to renew did not have to be recorded to be effective as to third persons so long as the option to renew was included in the recorded lease.
114The summary judgment filings show that St. Mary exercised the option to renew prior to the Sparks’ purchase. The lease was extended for an additional two-year term. Consequently, the Sparks had no mineral rights to lease to XTO in 2008 and cannot attribute the damages complained of to error on the part of United Title or First American. Because the record shows that there is no genuine issue of material fact and that the defendants are entitled to judgment as a matter of law, summary judgment is appropriate.
CONCLUSION
For the reasons stated, the trial court’s judgment is affirmed. Costs of appeal are assessed against the appellants, Claude Edward Sparks and Linda G. Sparks.
AFFIRMED.