MOORE, J.
| George and Nancy Spillman appeal a summary judgment that rejected their claim to enforce a warranty deed. We affirm.
FACTS
In April 2001, the Spillmans bought Lot 19, Deer Park Estates, a subdivision of DeSoto Parish, from Gaseo Inc. They signed a credit sale deed reciting that the sale was with “full guarantee of title.” The credit sale deed also stated, “Subject to any restrictions, easements and servi-tudes of record.” The credit sale deed made no reference to oil, gas and minerals; the Spillmans later averred via affidavit that nobody told them at the time that their purchase excluded the minerals.
Sometime in 2010 (presumably after trying to grant a mineral lease in the Haynes-ville Shale zone), they learned that in July 1999, Frank Scott Moran, a prior owner of the subdivision, had sold the entire tract to Gaseo Inc. by credit sale deed that expressly excluded the minerals from the sale; in November 1999, Moran had executed a sale and assignment of all oil, gas and other minerals under the tract to FSM, Inc. (FSM); and in February 2001, FSM had executed a sale and assignments of the minerals back to Moran. All these documents were filed in the conveyance records of DeSoto Parish before the Spill-mans bought Lot 19.
The Spillmans filed this suit in June 2010 against Gaseo, FSM and Moran. They conceded that when they bought Lot 19 in April 2001, they were unaware that Gaseo did not own the minerals. However, they alleged that Moran was the sole or majority stockholder in both Gaseo and FSM, and controlled both corporations; all three defendants knew or should have | gknown that Gaseo was giving them a warranty deed, but failed to disclose that, contrary to the recitals of the credit sale deed, Gaseo could not convey minerals it did not own. The Spillmans sought judgment enforcing the warranty deed by ordering the defendants to convey the minerals to them. In the alternative, they demanded monetary damages equal to the value of the minerals under Lot 19.
The defendants conceded that Moran was a stockholder in Gaseo and FSM. They asserted, however, that the credit sale deed was subject to “any restrictions, easements and servitudes of record,” and *153 that the documents reserving the minerals to Moran were of record.[1] They also urged the affirmative defenses of assumption of risk and estoppel.
The defendants then filed this motion for summary judgment. They asserted the same facts alleged in their answer, together with certified copies of all the 1999 and 2001 transactions, showing that all were filed in the conveyance records before the Spillmans bought Lot 19. They attached Moran’s affidavit, stating that as a result of these transactions, Gaseo never owned the minerals, and that wells were drilled in the area within 10 years of the creation of the mineral servitude. They also attached a portion of Mr. Spillman’s deposition, in which he stated that he did not examine the public records because he felt Gasco’s agent, Mr. Vennum, was a “very trustworthy type.” They argued that under the public records doctrine, the Spillmans had no claim.
|3The Spillmans opposed the motion, reiterating the facts of their petition. They also alleged that two or three months after they bought Lot 19, they received a “proposed act of correction” stating that through error and inadvertence the language reserving the mineral rights had been omitted from the credit sale deed. They also filed affidavits stating that nobody ever told them about a mineral servitude or reservation of mineral rights, and that they did not really understand what the clause “subject to any restrictions, easements and servitudes of record” meant. They argued that because the seller did not “clearly express the extent of his obligations arising from the contract,” any ambiguity or obscurity must be resolved against the seller. La. C.C. art. 2474.
At a hearing in May 2011, the Spillmans argued that the credit sale deed did not “call out specifically” or “declare the existence of this non-apparent servitude,” but referred only to “restrictions, easements and servitudes.” They also argued that Gaseo and FSM were controlled by Moran, and their collective conduct proved that they knew the reservation in the credit sale deed would not be sufficient to disclose the existence of the servitude. The defendants objected to the introduction of the proposed act of correction, but the record shows no ruling on the objection. They argued that the case was a simple application of the public records doctrine. Apparently, the court agreed and rendered summary judgment in favor of the defendants without written or oral reasons. The Spillmans have filed this appeal alleging two assignments of error.
LDISCUSSION
On appeal, summary judgments are reviewed de novo. Sparks v. United Title & Abstract, LLC, 45,766 (La.App. 2 Cir. 12/15/10), 56 So.3d 302. “Thus, appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law.” Cutsinger v. Redfern, 08-2607 (La.5/22/09), 12 So.3d 945, 949.
A motion for summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to *154 material fact and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). Further, La. C.C.P. art. 966(C)(2) provides:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
By their first assignment of error, the Spillmans argue that the court erred in granting the motion for summary judgment because the warranty of title in the credit sale deed protected the Spillmans from the mineral servitude that the defendants had created but did not declare to exist. They contend that Gasco’s express warranty created obligations under La. C.C. arts. 2475 and 2500, and the “sale of land includes mineral rights that are not expressly reserved or excepted.” Dillon v. Morgan, 362 So.2d 1130 (La.App. 2 Cir. 1978).
By separate argument, the Spillmans contend a “seller should not be allowed to obligate himself to deliver and to warrant title * * ⅜ and then by his own act or claim derogate from, or to assert rights to the thing contrary to, his obligations.” Coleman v. Burgundy Oaks LLC, 46,314 (La.App. 2 Cir. 6/8/11), 71 So.3d 352. Further, a reference that the conveyance was subject to recorded servitudes was not sufficient. Tealwood Properties LLC v. Succession of Graves, 45,975 (La.App. 2 Cir. 4/27/11), 64 So.3d 397. The fact that Gaseo subsequently sent them a proposed correction deed proves that Gaseo felt the language of the credit sale deed was not sufficient to negate the warranty as to a mineral servitude.
Responding to these arguments, the ap-pellees first object to the introduction and use of the unsigned “act of correction” to prove the intent of the credit sale deed, contending that it constitutes inadmissible parol evidence. Texaco, Inc. v. Newton and Rosa Smith Charitable Tnist, 471 So.2d 877 (La.App. 2 Cir. 6/12/85), writ denied, Texaco, Inc. v. Smith, 475 So.2d 1104 (La.10/4/85). They argue that the “subject to any restrictions, easements and servitudes of record” language in the credit sale deed is unambiguous and sufficient to put the Spillmans on notice that they were buying Lot 19, Deer Park Estates, subject to any recorded servitudes, including the instant mineral servitude which was recorded prior to the Spillman purchase. The Spillmans never checked the public records of |fiDeSoto Parish, nor did they ask anyone to check the title to the property. Mr. Spillman said that he did not read all of the credit sale deed and probably did not read the “subject to” language in the deed. They bought the lot for purposes of building their retirement home.
The defendants argue that Coleman v. Burgundy Oaks, LLC, supra, in which some of the deeds in question had identical “subject to” non-warranty language, is not controlling because the case was decided on the “single business enterprise” theory rather than the language in the deeds. Instead, they contend that the recent case of Sparks, supra, supports their position that the public records doctrine and the identical “subject to” language in the deed *155 in that case supports their position that the Spillmans acquired Lot 19 subject to the recorded mineral servitude and that this was the clear intent of the parties.
At the outset, we agree with the defendants that evidence of the attempted “act of correction” is inadmissible. “In general, a court may not rely on parol evidence to define an agreement regarding the sale of real property, as ‘[t]he designation of the sale should properly be based exclusively on the written act of sale.’ ” Taylor v. Fuselier, 2004-885, p. 2-3 (La.App. 8 Cir. 11/2/05), 915 So.2d 1030, 1031, quoting Strange v. Kennard, 99-406, p. 4 (La.App. 1 Cir. 3/31/00), 763 So.2d 710, 712.[2] In a |7real estate transaction, the written “act of sale” or “contract of sale” is embodied in the deed.
Next, the defendants contend that they are all collectively protected against the Spillmans’ suit by the public records doctrine referring to the often-repeated declaration by several courts that “all persons have constructive notice of the existence and contents of recorded instruments affecting immovable property.” See, e.g., Hasslocher v. Recknagel, 160 So.2d 421 (La.App. 2 Cir. 1/09/64), writ refused, 245 La. 964, 162 So.2d 14 (La.1964); cf. Sparks, supra; A.N. Yiannopoulos, 4 La. Civ. L. Treatise, Predial Servitudes § 126 (3d ed.). Whether this declaration is accurate or has any import has been questioned; [3] nevertheless, it is simply a restatement of the rule that a valid recorded instrument encumbering an immovable may be asserted against a subsequent acquirer of the immovable.
We distinguish Sparks, supra, which was a suit in negligence and breach of contract against the title company for an error in the deed. In this case, plaintiffs’ lawsuit is a contract action for breach of the implied warranty pursuant to C.C. art. 2500. It is well settled, though frequently misunderstood, that “for purposes of the implied warranty under Article 2500, a prospective purchaser of an immovable is not charged with ^constructive notice of recorded nonapparent conventional servitudes, nor is he required to search the public records in order to ascertain the existence or nonexistence of such servi-tudes.” A.N. Yiannopoulos, 4 La. Civ. L. Treatise, Predial Servitudes § 126 (3d ed.). (Emphasis supplied); Richmond v. Zapata Development Corp., 350 So.2d 875 (La. *156 1977), See also, Peter S. Title, Louisiana Real Estate Transactions, § 10.19 (1991). “The registry laws are intended only as notice to third parties and have no application whatever between parties to a contract.” Richmond v. Zapata, supra at 878; Young v. Sartor, 152 La. 1064, 95 So. 223 (1928). A vendee is entitled to rely on his deed as written and is under no obligation to search the public records in order to ascertain what the vendor has and has not sold him. Richmond v. Zapata, supra at 878; Young v. Sartor, supra at 1065, 95 So. at 228. “When a sale is made with an exception to the warranty clause, ‘constructive knowledge’ will not defeat the warranty action.” Collins v. Slocum, 317 So.2d 672 (La.App. 3 Cir.1975). Accordingly, Gasco, Inc., the vendor in the credit sale deed, cannot rely on constructive notice of the contents of the public records to defeat the plaintiffs’ warranty action. Only an express stipulation of non-warranty in the deed will prevent recovery. La. C.C. arts. 2474, 2500; Richmond v. Zapata, supra at 879.
On the other hand, Moran, whose mineral servitude was recorded prior to the plaintiffs’ acquisition of the land, and his vendor, FSM, are not vendors on the plaintiffs’ deed. They are not answerable to the plaintiffs in this warranty action unless there is merit to the plaintiffs’ theory that all three (Moran, FSM, and Gaseo, Inc.) operated as a single business |flenterprise designed to deceive and deprive the plaintiffs of their mineral rights. This issue is considered below in the plaintiffs’ second assignment of error.
We turn now to the question whether there was an adequate stipulation of non-warranty in the credit sale deed that will defeat this action in warranty. We are mindful that the relatively recent Haynes-ville Shale development has dramatically changed the landscape regarding the value of mineral rights even for small residential lots. Prior to the Haynesville Shale, mineral rights to residential lots were of minimal value, and typically, prospective homeowners rarely were concerned with whether their deed to a residential lot was subject to a prior mineral reservation, especially since the object of their real estate purchase was for residential purposes.
One of the seller’s obligations is to warrant the buyer’s peaceful possession against claims of third persons, both as to title to the thing sold and as to charges thereon not expressly declared at the time of sale. La. C.C. arts 2475 and 2500; Collins v. Slocum, supra. If the buyer is evicted from the thing sold, he is entitled to rescission of the sale. La. C.C. art. 2507. But in the case of a partial eviction from the thing sold, he may obtain rescission only if he would not have bought the thing without the part from which he was evicted. La. C.C. art. 2511. If he is not entitled to rescission, the buyer is entitled to a diminution of the price in a proportionate amount to the purchase price at the time of the sale. Id.; Collins v. Slocum, supra.
| j (Article 2500 defines the scope of the seller’s warranty against eviction, which includes the buyer’s loss of the whole or a part of the land sold because of a third person’s right that existed at the time of the sale. The warranty also covers encumbrances on the land that were not declared at the time of sale, with the exception of apparent servitudes and natural and legal nonapparent servitudes. Absent a clearly visible sign, such as a drilling operation or wellhead sitting on the property, a mineral servitude is generally considered a nonapparent servitude. Dillon v. Morgan, supra at 1131-32.
The pivotal issue in this case is whether Gaseo, Inc. limited its obligations of delivery and warranty in the deed by the decía- *157 ration included in the description of Lot 19 that it was “subject to any restrictions, easements and servitudes of record.” As stated above, this declaration requirement arises out of the warranty of ownership and peaceful possession provided by La. C.C. art. 2475. This warranty may be modified or limited. La. C.C. art. 2503. However, La. C.C. art. 2474 requires the seller to expressly declare the extent of his obligations.
Prior to its amendment by 1993 Acts, No. 841, § 1, effective January 1, 1995, C.C. art. 2474 required a vendor to clearly “explain” the extent of his obligations:
The seller is bound to explain himself clearly respecting to the extent of his obligations: any obscure or ambiguous clause is construed against him.
By virtue of the amendment, the legislature substituted the word “express” in place of “explain”:
InThe seller must clearly express the extent of his obligations arising from the contract, and any obscurity or ambiguity in that expression must be interpreted against the seller.
The revision commentator stated that the substitution of the word “express” for “explain” was made “in order to adjust the rule to the practice of everyday transactions.” La. C.C. art. 2474, Comment (a). The defendants contend that the “subject to” language in the deed in this transaction has been used in real estate deeds for a long time, citing the use of similar language in the deeds involved in Coleman v. Burgundy Oaks, LLC, supra.
The plaintiffs contend that the declaration or stipulation of non-warranty in the instant deed does not declare the existence of a mineral servitude burdening Lot 19. They contend that a buyer of a subdivision lot would not conclude from the clause “subject to any restrictions, easements, and servitudes of record” was a reference to anything other than a servitude for utilities or streets or the like. At best, the clause is obscure and ambiguous, which must be interpreted against the seller. La. C.C. art. 2474.
While the “subject to” clause in the deed does not inform the purchaser of any actual “restrictions, easements, or ser-vitudes of record” that may encumber the property, we conclude, nevertheless, that the clause is neither ambiguous nor obscure, and it expressly limited the seller’s warranty, while the purchaser was charged to go to the public records to find if any nonapparent servitudes are of record. The clear purpose of the stipulation of non-warranty was to expressly notify the purchaser that there may be such encumbrances recorded in the conveyance records that limit the seller’s warranty of ownership and possession of the described Lot 19. 112Although this clause requires the plaintiff to search the public records to find out what he has and what he has not purchased, which is contrary to the rule stated in Richmond, supra, we know of no reason or policy why a purchaser cannot agree to such limitation or modification in the Act of Sale. La. C.C. art. 2503. We therefore conclude that the declaration in the seller’s deed, which states that the conveyance is “subject to any restrictions, easements and servitudes of record,” meets the declaration requirements of articles 2474, 2475, 2500 and 2503 regarding the mineral servitude encumbering the property.
The plaintiffs also contend that the ordinary meaning of the term “servi-tudes” does not include “mineral servi-tudes,” thereby rendering the declaration clause ineffective with regard to mineral servitudes. Although we find no prior jurisprudence making a specific ruling on this issue, we conclude that the term *158 “servitudes” includes “mineral servitudes” in this deed. The primary object or purpose of the plaintiffs’ purchase in this case was to obtain a residential lot for a home, not the mineral rights, and the proportionate value of the mineral servitude covering that lot at the time of purchase in 2001 was- likely very small. We believe it to be a common practice in residential lot transactions to use general “subject to” language regarding restrictions and non-apparent servitudes that could possibly burden the lot but not affect its intended use as a residential property.
We conclude that Coleman v. Burgundy Oaks, Inc., supra, is not controlling in this case. In Coleman, a group of homeowners who purchased their lots from Burgundy Oaks, Inc., filed suit alleging that their Jjjdeeds did not disclose a mineral reservation that covered their respective properties. Some of the deeds contained a stipulation of non-warranty very similar to that used in the instant case, stating that the property described was conveyed “subject to all recorded servitudes, restrictions, rights-of-way, and easements.” The plaintiffs sued not only their vendor, Burgundy Oaks, Inc., but also sued its owner and the mineral rights owner, alleging, inter alia, fraud, breach of warranty, and negligent misrepresentation in a plan to deprive them of their mineral rights. The trial court granted the defendants’ motion for summary judgment. On appeal, a panel from this court reversed the summary judgment after concluding that there were issues of material fact in dispute regarding the single business enterprise theory that precluded summary judgment. There was no ruling by the panel regarding the “subject to” language in the deed.
Tealwood Properties, L.L.C., v. Succession of Graves, supra, is also factually distinguishable from the instant case. Although the deed in that case provided that the tract was sold “subject to all utility and other servitudes of record,” which would seem to make it similar to the instant case, the deed also had a specific provision regarding the landowner’s right to the minerals which stated that the vendor “does hereby convey and transfer any and all rights to oil, gas and other minerals ... except any production produced from that certain well named F.A. Baker No. 4....” The seller did not disclose that the entire property was subject to a pre-existing mineral servitude. The trial court dismissed the case based upon one-year prescriptive period for fraud. A panel of this court reversed on |14grounds that there was an extant action for reformation of the deed that was subject to the ten-year prescriptive period.
For these reasons, we conclude that the “subject to” language in the act of sale (deed) in this case did what La. C.C. art. 2500 and other relevant Civil Code articles require to exclude nonapparent servitudes, including mineral servitudes, to defeat this action for breach of the warranty against partial eviction. Accordingly, this assignment is without merit.
By their second assignment, the plaintiffs contend that the court erred in granting the motion for summary judgment because the Spillmans have a cause of action against all defendants for specific performance of the full guarantee of title and for damages in an amount equal to the minerals in, on or under their property. Moran was the “common person who had executed the documents shuffling the minerals” between himself, Gaseo and FSM; this created a single business enterprise as was found in Tealwood Properties, supra, and the defendants “cannot use a corporate cloak to play Three-Card Monte with the mineral rights to the Spillmans’ property.” They pray for judgment reversing the summary judgment.
*159 As stated above, Moran and FSM had a pre-existing, recorded mineral servitude covering Lot 19, prior to the plaintiffs’ purchase. As third parties to the transactions creating that servitude, they are deemed to have constructive knowledge by virtue of the public records doctrine. The plaintiffs allege that Gaseo, Inc. and FSM are all owned by Moran and that these three entities worked together to conceal the fact that they were not obtaining the mineral rights to Lot 19.
11fiBecause we have concluded that the sale from Gaseo, Inc. put the plaintiffs on notice that they were purchasing Lot 19 “subject to” any servitudes, including mineral servitudes of record, and by virtue of the public records doctrine that protects instruments recorded prior to the plaintiffs’ transaction, we find no merit to the allegation that the defendants were involved in some nefarious act to deprive them of their mineral rights. Common ownership does not create liability. Teal-wood Properties, supra, is factually inap-posite, and the case presents none of the normal grounds for piercing the corporate veil. Glenn G. Morris, Piercing the Corporate Veil in Louisiana, 52 La. L.Rev. 271 (1991).
For these reasons, the judgment of the trial court is affirmed. The parties must bear their own costs.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, CARAWAY, DREW and MOORE, JJ.
Rehearing denied.

. The defendants also filed a third party demand against United Title, which performed the title exam for the credit sale deed to the Spillmans. United Title asserted the three-year peremptive period of La. R.S. 35:200, which the trial court sustained. No one has appealed the judgment sustaining this exception.

. By way of comment only, we note that- the act of correction arguably has "reservation language” as opposed to "subject to” or language of exception. This is a critical distinction explained in Hodges v. Long-Bell Petroleum Co., 240 La. 198, 221-22, 121 So.2d 831, 839 (1959):
There is a difference between the sale of a tract of land with a reservation of the minerals and the sale of land subject to existing mineral rights in it. The former is accomplished with language of reservation and indicates that something new is being created. A vendee under such mineral reservation is led to believe that the servitude created by it will prescribe at the end of ten years unless there is mineral development within that time on the land sold. On the other hand, the latter form of conveyance, accomplished with language of exception, puts the vendee on notice that there is a pre-existing mineral servitude on the land which may extend beyond the limits of the land purchased, and that prescription on any such servitude may have been interrupted, or may in the future be interrupted, by mineral development on land other than his own. Hence, language of reservation will suffice to declare one type of charge against the land, but language of exception is necessary to declare the other.

. The constructive notice doctrine is strongly criticized as "technically inaccurate, unnecessary, and otherwise objectionable” by Professor Redmann. See William V. Redmann, "The Louisiana Law of Recordation: Some Principles and Some Problems,” 39 Tul. L.Rev. 491, 498 (1965).