This is a petitory action. Plaintiff contends that the deed upon which he relies for title is a valid deed, transferring the property in question to him and, in the alternative, if it is not good as a deed, it is valid and binding as a donation inter vivos.
After spending much time reviewing the law applicable to the facts in this case, we discovered that although the documents alleged upon by plaintiff for a chain of title were offered in evidence in the lower court, upon request of counsel for plaintiff they were withdrawn and plaintiff was given the privilege of substituting certified copies.
For reasons unknown to us, there are no certified copies in the record and without said deeds or copies, there is nothing upon which we might base a judgment. We *Page 666 
assume that plaintiff through oversight neglected to have the copies made and inserted in the record. It was his duty to do so.
We are therefore forced to remand the case to the lower court for the record to be completed. If it is not completed within sixty days, the case is to be returned here and we will take such action in it as the law will justify.
 On the Merits.
This is a petitory action. Plaintiff deraigned his title showing that he acquired the following described land: "Lot No. 1 of Square 5, of Renwick's Addition to the City of Monroe, Louisiana, as per plat of said Addition on file and of record in the office of the Clerk of Court for Ouachita Parish, Louisiana, together with all improvements thereon and all appurtenances thereunto belonging," by deed from Mary Norman on November 20, 1933.
Plaintiff alleged that during the time Mary Norman owned the property, she paid all taxes due on it. He further alleged that on the date he acquired the property, he went into civil possession of it, paid all taxes due since that date; that he permitted Mary Norman to live on the property until her death and that he possessed through her until that time.
Plaintiff further alleged that the defendants herein went in the actual, physical possession of the property immediately after the death of Mary Norman and have remained in possession since that time; that although they are in actual, physical possession of said property without any title whatsoever, they refuse to deliver possession to him. He prays to be recognized as the owner of the property and entitled to undisturbed possession thereof.
Defendants in answer deny that plaintiff is the lawful owner of the property and deny that he at any time acquired title to it by a deed translative of title. They admit that Mary Norman had a good and valid title to the property and that she occupied the premises peacefully until her death and that since her death, they have occupied and possessed the premises.
Further answering, defendants allege they are "the legal heirs, being legal grandchildren of the deceased, Mary Norman, and as such have inherited all her rights, title and interest in the property herein sued on". Defendants further plead that the deed under which plaintiff claims title is null and void for want of consideration; and that he has never been in possession of said property and that they, defendants, are the true and lawful owners thereof.
The lower court rendered judgment for plaintiff as prayed for and defendants are prosecuting this appeal.
Plaintiff seriously contends that the defendants have not set up title in themselves and are, therefore, trespassers and as such are not entitled to the right to question the title of plaintiff; that when he filed his deed including the deed from Mary Norman, it was in legal form as a cash deed, reciting a consideration of $1 and other good and valuable consideration, that a prima facie case had been made out by him, and since the defendants were without right to question or rebut this prima facie case under their pleadings, he was entitled to judgment.
We presume the lower court accepted the plaintiff's view as correct. We seriously doubt the correctness of this view. Defendants alleged in Paragraph 9 of the answer, "they are the legal heirs, being legal grandchildren of the deceased, Mary Norman, and as such have inherited all her rights, title and interest in the property herein sued on"; and in Paragraph 11 they allege they are the true and lawful owners of the property. While it is true that the allegation is quite vague and indefinite in that they do not allege that their parents, the son or daughter of Mary Norman, is dead, it is alleged that they are the legal heirs of Mary Norman and as such have inherited the property. We are of the opinion the allegation is sufficient to remove defendants from the class of trespassers and is a sufficient allegation to allow them as defendants to contest the prima facie title of plaintiff. But, if not, plaintiff in proving his case offered evidence over the objection of defendants' counsel which we think proved the heirship of defendants.
Plaintiff offered in evidence a will which was executed by Mary Norman on October 18, 1933, and which has never been probated, wherein she stated: "I disinherit my adoptive grandson, Leondis Rowland, and my natural grandchild, Nicey Rowland, for the reason that neither of them have ever contributed to my support in my old age or at any other time during their lives, although I raised them until they were of age to support themselves."
She then continues as follows: "I hereby give and bequeath to my good and kind friend, Samuel Moses Woods, who has *Page 667 
faithfully taken care of my property, has rendered me many kindnesses and who will support me for the balance of my life, all my worldly goods that I die possessed of."
She further states that she dictated the will to a prominent lawyer in the City of Monroe and that he wrote it at her dictation. It is signed by Mary Norman and in the presence of five witnesses.
Mary Norman was at the time of making the will 78 years old and was an ignorant negro woman. It is evident that the will was made under the advice of a reputable lawyer who well knew that the will would be near worthless as long as there were forced heirs, to-wit; her grandchildren, and they were, therefore, disinherited for the reasons she gave. We are of the opinion that when plaintiff offered and filed the will in evidence, he established a forced heirship of the grandchildren named therein. Otherwise, there would have been no need to disinherit them. However, from this present suit, it appears that one grandchild was not disinherited. This may account for the deed, under which plaintiff is now claiming, having been executed on November 20, 1933, one month and two days after the will was executed. The only import the will can have is to show that Mary Norman was not insane and that she wanted plaintiff to have her property and that he had rendered her some assistance prior to that time.
In putting on his case, plaintiff also offered proof to show the true consideration for the transfer. The deed recited the consideration as $1 and other good and valuable consideration. Plaintiff testified that the true consideration for the transfer was that he would take care of Mary Norman during the time she was living, aid her and, in her illnesses, if she were ill, to get a physician. He does not claim that any prior acts of his towards Mary Norman entered into the consideration. He says that he took care of her; that he lived only half a block away and went by to see her daily and, when asked if he had supplied her needs, he replied: "So far as my ableness was concerned in financial matters."
Plaintiff has paid the taxes on the property since he acquired deed and claims to have paid the taxes for two years before that time. According to his statement as to the true consideration, the taxes he claims to have paid prior to the execution of the deed did not enter into it. He does not specify any amount he expended on Mary and did not attempt to go further into details regarding his care of her. He did not offer one witness to corroborate him in any respect as to any assistance or care he gave to this old darkey after the deed was executed. She was one of those we often speak of as "the old time negro", and had worked for Mr. Marshall Munholland, living on his place for years. When she became too old to work he had her move to her own home, the property in dispute. Mary Norman lived by herself for several years. She had some small amount of rent money coming in regularly from some other property she owned which, we gather from the plaintiff's testimony, he now has in his name. She lived in a thickly populated negro settlement. Mr. Munholland and his family often supplied her with many things she needed, such as food, clothing, etc. She was practically an object of charity and the other neighbors so considered her. A number of them looked after and supplied her with food and other necessities as they were needed. Not one of these neighbors had any knowledge of any help that plaintiff had extended to Mary Norman. Some of them say that plaintiff "pidgeon-drapped" her, whatever that means, and that he took what little money she had.
It is a certain fact that plaintiff did not take care of Mary Norman. The last few months before she died her granddaughter, one of the defendants herein, came back from Arkansas and found the old woman in the Old Folks' Home for colored people and had been there for more than a year. This granddaughter moved her back to her old home and gave her as much attention as was possible under the circumstances, dividing her time between nursing her father and grandmother. She secured a doctor for the latter and he was paid out of sick benefit insurance carried for the grandmother by this granddaughter.
Defendants had produced nearly all of their witnesses to prove the above facts before plaintiff raised any objection. The evidence was then allowed subject to the objection. However, there was sufficient evidence in the record to establish the above facts before the objection was urged, even if it had been good, and we are of the opinion that it was not good.
It is certain, to our minds, that there was no consideration for the deed sufficient to translate the property. *Page 668 
Plaintiff contends, in the alternative, that if the instrument is not good as a deed, it is good and binding as a donation inter vivos. It is a notarial cash deed on a regular stock form, signed by Mary Norman and Sam Moses Woods in the presence of two witnesses and the notary. There is no acceptance "in precise terms" as is required by Article 1540 of the Revised Civil Code, and there was never any corporeal possession in the vendee, Woods, as required by Article 1541 of the Revised Civil Code.
In Succession of Mora, 51 La.Ann. 316, 25 So. 123, 124, the court, defining for the first time what is meant by "in precise terms", said:
"In this the `legislator exceeded the limits even of solemnity in further exacting that the consent of the donee should be made manifest by express terms.' Id. But article 932 is formal, — `Donation shall have effect only from date of its acceptance in precise terms.' Id. These were the words used to point out that without formal acceptance there was no donation.
"It was announced in energetic terms that no effect should be given to the instrument, unless it is made manifest by the acceptance of the donee."
And in Gabert v. St. Tammany Yacht Club, 166 La. 57,116 So. 667, 669, the Court said:
"The donation, in this instance, was not made by an act passed before a notary public and two witnesses. It is true that two of the donors, August Gaston Gabert and Mrs. Adelaide Gabert Peterson, each signed in the presence of a notary public and two witnesses an acknowledgment that the instrument had been signed by them in the presence of the two witnesses; but whether such an acknowledgment had the same effect, as to those two donors, as if the instrument showed that it was actually signed in the presence of the notary public, is a matter of no importance, because the instrument was invalid as a donation for the further reason that it was not formally accepted by the donee, and the latter was never put into possession of the property. Articles 1540 and 1541
of the Civil Code declare that a donation inter vivos has no effect unless and after it is `accepted in precise terms' by the donee, by an authentic act, or unless the donee has been put into actual possession of the property donated.
"It is well settled that, if an act of donation is defective in form, or lacks any of the requisites of articles 1536, 1540, and 1541 of the Civil Code, its invalidity is not saved by its being disguised in the form of a sale or other contract.
"Heirs of Cole v. Cole's Executors, 7 Mart. (N.S.) 414; Farrar v. Michoud, 22 La.Ann. 358; Spanier v. Devoe, 52 La.Ann. [581] 585, 27 So. 174; Reinerth v. Rhody, 52 La.Ann. [2029] 2033, 28 So. 277."
The instrument, therefore, is not good as a donation.
Defendants do not pray to be declared the owners of the property. They merely pray that the demands of plaintiff be rejected.
We have concluded that the judgment of the lower court is erroneous, and it is now reversed and the demands of plaintiff rejected at his costs.