772 So.2d 373 (2000)
Jimmy MOORE, Plaintiff-Appellee,
v.
Freddy Lee WILSON and Vicki Moore Wilson, Defendants-Appellants.
No. 34,135-CA.
Court of Appeal of Louisiana, Second Circuit.
November 3, 2000.
*375 Thomas & Thomas by Loyd K. Thomas, Shreveport, Counsel for Appellants.
Paul V. Myers, Ringgold, Counsel for Appellee.
Before CARAWAY, PEATROSS and KOSTELKA, JJ.
CARAWAY, J.
This is a suit to set aside a cash sale deed. The case was tried after the death of the "vendor" and thus without any testimony of his intentions for the transaction. Although the purchasers admitted at trial that the price stated in the deed ($10.00 cash) was never paid, they asserted that a donation was intended. The trial court found that although the deed (an authentic act) was valid as to form for a donation, it was nevertheless null because the donor lacked the requisite donative intent. The judgment ordered the deed set aside and cancelled from the conveyance records. For the reasons expressed herein, we affirm the ruling of the trial court regarding the cancellation of the deed, but remand the case for further consideration of appellants' reconventional demand which the trial court's judgment neglected to address.

Facts
On March 4, 1997, Jimmy Moore filed suit to rescind a deed dated March 4, 1996, in favor of his granddaughter, Vicki Moore Wilson and her husband, Freddy Lee Wilson, which purportedly conveyed for $10.00 an undivided one-fifteenth interest in 119 acres of land located on Lake Bistineau in Bienville Parish, Louisiana. Plaintiff's daughter, Willie Alice Moore Green, signed a verification of Moore's petition as his agent and attorney-in-fact. Subsequently, Moore died on October 25, 1997. He was reputedly 107-years-old, and it was established at trial that he was illiterate. Green, as Executrix of the Succession of Jimmy Moore, was substituted as party plaintiff on May 7, 1998.
The suit alleged that the deed was a sham and fraud since Moore never intended to sell his interest in the property, nor did he remember signing the deed. Alternatively, the petition alleged that the sale should be rescinded for lesion. At trial, the Wilsons admitted that the $10.00 consideration recited in the deed was never paid.
The deed was executed by Moore and the Wilsons in Shreveport and notarized by Robert McLane, a Caddo Parish notary. Plaintiffs counsel subpoenaed the notary, who appeared in court on the day of trial and was sworn. Before he was called to testify, McLane left the courthouse on the first day of trial without notice. Despite the issuance of a bench warrant for his contempt and a delay in the trial for 4½ months, McLane never testified.
After Moore died, Green filed a supplemental petition, alleging that the defendants coerced Moore into signing the deed in question by threatening that the property may somehow be lost by "HooDoo." Defendants responded with a reconventional demand alleging, alternatively, their entitlement to compensation for the value of improvements made on the property.
At trial, defendants testified that they began working on the property in 1994, two years before the deed was executed. They cleared overgrowth and did bulldozer work. In February 1997, they expended $3,523 for fill dirt, fencing and water well installation. However, they did not begin living there until January of 1999, after they moved a mobile home onto the land.
The property was co-owned by Moore and his siblings, and the disputed 1/15th interest was his entire undivided interest in the land. Moore did not live on the 119-acre tract. Prior to his death, he was living with his granddaughter Green, who testified that she was his primary caregiver. Vicki testified that another individual named Aunt Dolly, apparently a co-owner, lived on the property. The Wilsons testified at trial that Moore wanted them to have the land.
*376 In its reasons for judgment, the trial court found that the evidence failed to establish Moore's donative intent. Furthermore, the trial court stated that it "was not convinced there was even a close relationship" between Moore and the alleged donees, Vicki and Freddy Wilson. Accordingly, the trial court ordered that the deed be set aside and erased from the public records.

Discussion

I.
The disputed sales contract in this case states a price which is merely nominal. As expressed in La. C.C. art. 2464:
The price must not be out of all proportion with the value of the thing sold. Thus, the sale of a plantation for a dollar is not a sale, though it may be a donation in disguise.
Recognizing this fatal flaw in the "sale," the Wilsons admitted the non-existence of a price and attempted to defend the suit by claiming that a donation nevertheless occurred. They now argue that the trial court was manifestly erroneous in failing to recognize Moore's donative intent.
La. C.C. art. 1970 addresses the misstatement of cause in a contract and provides:
When the expression of a cause in a contractual obligation is untrue, the obligation is still effective if a valid cause can be shown.
In Reinerth v. Rhody, 28 So. 277 (La. 1900), a granddaughter filed suit to annul a deed conveying a portion of her grandmother's property to a caretaker, who was also a relative. The deed was signed two days before the grandmother died. The court first noted that "one dollar and other valuable consideration" recited as the price "was no consideration at all." The court then concluded that the act was not a simulated sale since the ill-stated price did not conceal anything. Nevertheless, the testimony showed that the grandmother, although weak and feeble, understood what she was signing. Finding that the evidence proved the donor's intent to donate, the court upheld the instrument as a valid inter vivos donation between the parties. The court stated:
The act complies with all the forms necessary to an act of donation. The act differs from an act of donation in that it sets out that vendor `sells, transfers, and conveys.' If the word `donates' had been used instead, the act would have been complete and legal beyond all question. The act may import a donation if there is no price. Such an act may be valid as a donation if it contains all the formality required in a donation. The law requires that in the matter of donations the act be in authentic form. If it be in that form, and there be no price, it may yet be held valid as a donation when it contains all the requisite formalities and the donee at once goes into possession, though the act would be null as a sale.
Id. at 277, 278.
Another case where the transferee of the property was allowed to prove the existence of a donation was Nofsinger v. Hinchee, 199 So. 597 (La.App. 1st Cir. 1941), where a brother and sister sued to set aside a deed conveying their undivided one-half interest in farmland to their cousin, alleging that no consideration was paid therefor. The deed recited as consideration for the sale the sum of "$1,000 cash and other valuable consideration." Defendant admitted this was not paid nor intended to be paid. The deed was executed by the parties shortly after plaintiffs' mother's death, along with other matters relating to the succession. Plaintiffs alleged that they did not know what they signed and did not intend to donate any property to defendant. The "notary-attorney" who prepared the deed testified that all of the parties signed the act after it had been read and explained to them as an act which was in keeping with the decedent's desires. The trial court noted that the instrument could not stand as a sale because it lacked consideration; nevertheless, *377 the act was in authentic form. In light of the notary's testimony and viewing the evidence as a whole, the court upheld the transfer as a valid donation.
In this case, although the contract was executed as an authentic act, which is the form required for a donation,[1] the trial court determined that Moore's donative intent was not proven by the Wilsons. From our review of the record, we find no error in the trial court's ruling. The evidence did not show that Vicki's relationship with her grandfather was close. The Wilsons did not show that they had rendered services to Moore. Moore was allegedly 107-years-old and illiterate. Moore's daughter and caretaker at the time the instrument was executed was unaware that the trip to Shreveport and the transaction had occurred. Since the Wilsons did not produce testimony from the notary and witnesses to the transaction to describe the circumstances of the act, the trial court could reject the Wilsons' self-serving testimony which was the only evidence of Moore's donative intent.
Moore's donative intent was also not reflected by any significant change in corporeal possession of the property. If Moore had solely owned and occupied the tract and had placed the Wilsons into corporeal possession, the delivery of corporeal possession coupled with the language of conveyance in the authentic act would strongly imply donative intent.[2]
Finally, in other related assignments of error, the Wilsons dispute (i) the initial filing of the suit by Green as Moore's agent, (ii) the trial court's refusal to allow Moore's attorney to be called to testify about the execution of Moore's will on March 18, 1997, and (iii) the allowance of hearsay testimony. We find that the first two of these assignments of error have no relevance to the central issue of Moore's donative intent. Whether Moore authorized the filing of this suit was not questioned by defendants during the seven months between the filing of the suit and Moore's October 1997 death. Thereafter, the succession representative was fully qualified to challenge the apparent deficiency of the cash sale deed, and she was substituted as plaintiff. Additionally, from our review of Moore's will, which was allowed into evidence, no property of his estate is specifically identified in his will, and Green is simply listed as a universal legatee. Regarding the last assignment of error, the trial court's allowance of certain statements attributed to Moore, which the Wilsons assert as hearsay, would in any event be harmless error in view of the lack of sufficient evidence presented by the Wilsons to establish donative intent. Accordingly, we find no merit in these additional assignments of error which would cause us to find manifest error in the trial *378 court's ruling regarding Moore's donative intent.

II.
Defendants assert that the trial court erred by denying their motion for a continuance after a material witness, Robert McLane, absented himself from the trial proceedings. After lunch recess during the first day of the trial, plaintiff's attorney called McLane, who was the notary public before whom the deed was executed. The court was advised that McLane was no longer in the building, at which time the parties agreed to continue the trial until McLane could be located to testify. The court issued a bench warrant returnable two weeks later, on May 7. The parties returned to court on May 20 to discover that the bench warrant was returned unserved, whereupon it was reissued by the court. The parties returned to court some four months later, on September 9, to conclude the trial. Defendants immediately moved for a mistrial or alternatively, for a continuance, based on the unavailability of McLane as a witness. The trial court denied the motion for a mistrial and after opposing counsel objected to the motion for a continuance, denied the continuance as well.
A continuance may be granted on either peremptory or discretionary grounds. Gilcrease v. Bacarisse, 26,318 (La.App.2d Cir.12/7/94), 647 So.2d 1219. La. C.C.P. art. 1602 provides:
A continuance shall be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance.
Several conditions must be met, however, before La. C.C.P. art. 1602 will be applied. The material witness must have absented himself contrary to the wishes of the party seeking the continuance. It must also be shown that the witness is material or essential to that party's presentation of his case. Additionally, the party requesting the continuance must have exercised due diligence, yet been unsuccessful, in obtaining the material evidence. American Motorists Ins. Co. v. State, Workers' Compensation Second Injury Bd., 544 So.2d 595 (La.App. 1st Cir.1989). As an exercise of due diligence, the party seeking the continuance is obliged to take other steps to secure the alleged material testimony. See, Herb's Machine Shop, Inc. v. John Mecom Co., 426 So.2d 762 (La.App. 3d Cir.1983).
From our review of this issue, while McLane may have been a material witness, we first find it significant that the trial was commenced with McLane having been subpoenaed as a witness by the plaintiff and not the Wilsons. His absence therefore cannot be said to be contrary to the wishes of the party seeking the continuance. This weakness in the Wilsons' position is further borne out by the unexplained absence of testimony from either of the two witnesses to the authentic act.
Regarding the motion for continuance, the trial court properly questioned whether McLane would ever be available to testify, acknowledging that he may have moved out of state. Defendants simply did not know what had become of him. The record does not reveal what other efforts, if any, the Wilsons made to secure McLane's testimony. Thus, the trial court's denial of the motion for a continuance was not an abuse of discretion. For the same reasons, the trial court's denial of the more drastic remedy of mistrial was likewise appropriate under the circumstances.

III.
Defendants' next assignment of error urges that the trial court erred in denying their peremptory exception of prescription. They argue without elaboration or citation to a statute that Green *379 instituted the action without the authority of Moore and that therefore the action had prescribed. Turning to the record for clarification, we find that defendants' peremptory exception of prescription alleged that Green acted improperly, and that the alleged one-year period of prescription had elapsed.
Reformation of an instrument is an equitable remedy which lies only to correct mistakes or errors in written instruments when such instruments, as written, do not express the true contract of the parties. It is a personal action, even when applied to real estate. Lewis v. Saucer, 26,685 (La.App.2d Cir.4/5/95), 653 So.2d 1254. A personal action is subject to a liberative prescriptive period of ten years pursuant to La. C.C. art. 3499.[3]Robert Investment Co., Inc. v. Eastbank, Inc., 496 So.2d 465 (La.App. 1st Cir.1986). Cf., Travis v. Felker, 434 So.2d 1222 (La.App. 1st Cir.1983) (where the exception of prescription to a claim to set aside a deed for lack of consideration was upheld after determining that the prescription applicable to nullity actions [now La. C.C. art. 2032[4]] applied).
In the instant case, the deed in question was executed and recorded on March 4, 1996. Moore's petition was filed on March 4, 1997 and Green's supplemental petition on September 16, 1998, well within any applicable prescriptive period as shown from the above jurisprudence. Thus, we find no error in the trial court's dismissal of defendants' peremptory exception of prescription.

IV.
In defendants' final assignment of error, they assert that the trial court erred in denying their reconventional demand for reimbursement for the value of improvements on the land. The record discloses that a few weeks prior to the filing of suit, defendants' activities on the land included water well installation ($2,300.00), hauling in fill dirt ($200.00) and putting up fencing ($822.70). Defendants argue that they are possessors in good faith under La. Civ.Code Art. 487,[5] thus entitling them to reimbursement for the value of these improvements under La. C.C. art. 496.[6]
First, we note that the trial court's Reasons for Judgment did not address the issue of defendants' entitlement to reimbursement for improvements nor did the court's judgment dismiss their reconventional demand. Second, the record clearly shows that Moore was a co-owner of the property. Therefore, the identities and possible joinder of any remaining co-owners against whom the Wilsons could assert their claim should be considered before any such claim can be adjudicated.
The joinder of parties needed for just adjudication is addressed in La. C.C.P. art. 641.[7] The failure to join a *380 party under La. C.C.P art. 641 may be noticed by an appellate court on its own motion. Estate of Bradford v. Thomas, 29,807 (La.App.2d Cir.9/24/97), 700 So.2d 1030. Since all co-owners of the land in question are not parties to this suit, the joinder of all parties needed for just adjudication of this issue is not present. See, Lanham v. Tri-State Sand & Gravel, Inc., 33,180 (La.App.2d Cir.6/21/20), 764 So.2d 268. Thus, we remand the case for a determination by the trial court of all parties needed for adjudication of the Wilsons' reconventional demand consistent with La. C.C.P. arts. 641, et seq.

Conclusion
Based on the foregoing, the ruling of the trial court to set aside and cancel the cash sale deed is hereby affirmed. The case is remanded to the trial court for consideration of the appellants' reconventional demand and the joinder of all parties needed for the adjudication of such demand. Costs of these proceedings are assessed to appellants.
AFFIRMED AND REMANDED.
NOTES
[1] La. C.C. art. 1536 provides: "An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity."
[2] We have chosen to affirm the determination that no donative intent was shown and do not address the implications of La. C.C. arts. 1540 and 1541 regarding acceptance of the donation during the life of the donor "in precise terms" or by the donor's placing the donee into corporeal possession. In Wood v. Martin, 2 So.2d 665 (La.App. 2d Cir.1941), this court examined a similar cash sale deed ($1 and OVC), where no price was paid, but which was executed by the "vendor" and "vendee" as an authentic act. The court rejected the claim of donation after the alleged donor's death on the basis of the strict requirements of the code for acceptance since the vendee did not express acceptance in the deed's language and had never taken corporeal possession. Such requirements for acceptance were apparently also lacking in Reinerth, supra; yet the supreme court did not discuss Articles 1540 and 1541 and instead enforced the contract as a donation once cause was proven with extrinsic evidence. Indeed, the most essential and formal requirement of La. C.C. art. 1536 for an authentic act expressing donative intent is missing in Reinerth and in Nofsinger, supra; nevertheless the courts allowed extrinsic evidence to prove such intent. Nofsinger, supra, is now cited with approval in revision comment (b) to La. C.C. art.1970.
[3] La. C.C. art. 3499 provides as follows: "Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years."
[4] La. C.C. art. 2032 provides as follows: "Action of annulment of a relatively null contract must be brought within five years from the time the ground for nullity either ceased, as in the case of incapacity or duress, or was discovered, as in the case of error or fraud."
[5] La. C.C. art. 487 provides as follows: "For purposes of accession, a possessor is in good faith when he possesses by virtue of an act translative of ownership and does not know of any defects in his ownership. He ceases to be in good faith when these defects are made known to him or an action is instituted against him by the owner for the recovery of the thing."
[6] La. C.C. art. 496 provides as follows: "When constructions, plantings, or works are made by a possessor in good faith, the owner of the immovable may not demand their demolition and removal. He is bound to keep them and at his option to pay to the possessor either the cost of the materials and of the workmanship, or their current value, or the enhanced value of the immovable."
[7] La. C.C.P. art. 641 provides as follows: "A person shall be joined as a party in the action when either: (1) In his absence complete relief cannot be accorded among those already parties. (2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either: (a) as a practical matter, impair or impede his ability to protect that interest. (b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations."