CARAWAY, J.
hAt the time of the vendors’ execution of a 2003 warranty deed for the sale of land, a corporation, solely owned by vendors, owned a mineral servitude encumbering the land. The purchaser filed this action against the vendors for breach of contract and also sued the corporation, seeking from the corporation “the specific performance of transferring the mineral rights” to the plaintiff. Upon the corporation’s exception of prescription, the trial court dismissed the action against it, finding applicable a one-year period of prescription. For the following reasons, we find a cause of action against the corporation for reformation of the deed which, as a contractual matter, has not prescribed. Accordingly, we reverse the trial court’s ruling and remand for further proceedings.

Facts and Procedural History

This suit was filed on June 18, 2008, by Tealwood Properties, L.L.C. (“Tealwood”). The disputed transaction at the center of this controversy is a ‘Warranty Deed” (the “Deed”) for the sale of land dated August 11, 2003. The vendors, husband and wife, were Glen D. Graves, who is now deceased and whose succession is a party defendant, and Mary Maricelli Graves (collectively the “Graves”). The purchaser of the property was Tealwood.
The Deed was a cash sale of 477.99 acres (the “Tract”) near Greenwood, Louisiana, for a stated price of $1.25 million. The Deed provided that the Tract was sold subject to all “utility and other servitudes” of record. The Deed contained the following provision regarding the landowner’s right to the minerals and a limited mineral reservation by the Graves:
Vendor does hereby convey and transfer any and all rights to oil, gas and *400 other minerals lying on or under said property except any production produced by that certain well named F.A. Baker No. 4, having Serial No. 163340, exploration by Novy Oil & Gas Company, Inc., which is hereby reserved by Vendor.
(hereinafter the “Baker Well mineral reservation”).
The Graves’ conveyance of the land subject to the minimal Baker Well mineral reservation gave rise to this dispute over the effect and meaning of the Deed regarding the landowner’s right to the minerals [1] which Tealwood was to acquire. At the time of the Deed, it is undisputed that the Tract was subject to a pre-existing mineral servitude affecting all minerals in the property. The mineral servitude (the “Dale Servitude”) had been conveyed in August 1990 to Dale Oil Corporation (hereinafter “Dale”) by Mildred Elizabeth Meeker, who was the mother of Mr. Graves. Later, in December 1990, Ms. Meeker sold the land to her son and daughter-in-law. Tealwood’s petition alleges that Dale was at all times the wholly-owned corporation of the Graves. Since the Dale Servitude remains a burden on the Tract, Tealwood sued Dale along with the Graves in a petition which it labeled, “Petition for Specific Performance, Breach of Contract, Civil Fraud, Bad Faith, Attorney Fees and Costs.”
Tealwood made the following allegations against the Graves and Dale:
1) The Graves “transferred any oil, gas and other minerals lying on or under said property except any production produced by that certain well named F.A. Baker No. 4.”
2)Dale Oil Company “was and is wholly owned by Glen D. Graves, President, and wife Mary Maricelli Graves, Vice President.”
3) At all times “relevant herein, Mr. Graves acted in both his individual and official capacity as president of Dale.”
4) Dale acquired the mineral rights in August of 1990; Mr. Graves, acting in both his individual and official capacity knew this fact. At no time during the negotiations of the transaction between the Graves and Tealwood did Mr. Graves, in his individual or official capacity, disclose to Tealwood that the mineral rights were held by Dale.
5) The Graves were under a duty to disclose the material fact that Dale owned the mineral rights and “deliberately failed to do so resulting in a physical and a civil fraud representation.”
6) Damages are “owed for liability under breach of contract, breach of warranty, negligence, civil fraud, damages in bad faith, attorney fees and costs, expert witness costs, court costs, as all may appear reasonable in the premises.”
7) The defendants “have failed in their obligation to deliver a thing and to do acts as they were required by their own contracts.” The plaintiffs are entitled to have the court “grant the specific performance, plus damages, plus attorney fees as may appear reasonable in the premises.”
Tealwood prayed for judgment against the Graves and Dale “for the specific performance of transferring the mineral rights” to Tealwood.
There were two third-party transactions involving the Dale Servitude which occurred in 2008 before the filing of this suit. The first, as alleged in Tealwood’s amend *401 ed petition, was a mineral lease granted by-Dale in April 2008. The second involved a mineral sale of one-half of the minerals to the Tract by Dale to Jones Energy Company, L.L.C. (“JEC”), in May 2008. Although Tealwood named JEC as a defendant in this action and sought to set aside the JEC purchase from Dale, the trial court dismissed the claim against JEC. That judgment is now final. Tealwood asserts that the April 2008 oil and gas lease amounts to an element of the damages caused by the 1^breach of the warranty obligations of the Deed. Tealwood has not sought to set aside the rights of the mineral lessee. Thus, as to Tealwood’s claim “for the specific performance of transferring the mineral rights” from Dale, such a claim may only pertain to the remaining one-half of the Dale Servitude, with that half interest being subject to the April 2008 mineral lease.
On July 10, 2009, Dale filed an exception of prescription which is now the subject of this appeal. Dale argued that because no contractual relationship existed between Tealwood and Dale, only a delictual claim for fraud was alleged and was subject to a one-year prescriptive period. The Graves also filed an exception of prescription which sought the dismissal of “all non-contractual and/or fraud based claims” against them on the basis of the tolling of the one-year prescriptive period. In a supplemental memorandum in support of the prescription exception, the Graves submitted copies of excerpts from Tealwood’s Title Insurance, the deposition testimony of Jim Davis (Graves’ attorney), P. Carter Rogers (Tealwood’s closing agent) and Pete Kourtis (President of Tealwood). Also submitted was an August 11, 2003 “Release of Surface Rights” executed by Dale in favor of Tealwood relinquishing and waiving its right to conduct surface operations on the property. In the document, Dale declared that “it has all rights of minerals reserved as Vendee” under the Meeker/Dale Mineral Deed dated August 22, 1990. Further Dale acknowledged such rights and waived and released in favor of Tealwood:
All rights to use of the surface of the herein described property from any oil, gas or other mineral exploration, removal, development, that no pipeline or right of way shall be granted or placed over or under said property for any other use, that Appearer may have under |sthe said conveyance, and agrees and consents that the said hereinabove described property may be sold and resold hereafter free and clear of such surface rights.
On August 3, 2009, Tealwood filed a motion for a partial summary judgment against the Graves and Dale, “for the specific performance of transferring the mineral rights to Plaintiff.” Tealwood alleged that Dale was the alter-ego of the Graves and that at all times in his dealing with Tealwood, Mr. Graves acted in both his individual and official capacity as president of Dale. Tealwood contended that because Dale is the alter ego of the Graves who “intentionally defrauded” Tealwood, Dale and the Graves “were the same entity in the transaction which transferred the property to Tealwood.” Attached to the motion for partial summary judgment was the affidavit of John James, the individual who negotiated the Graves/Tealwood transaction.
The Graves and Dale opposed the motion for summary judgment, offering the same evidence previously presented in support of their exceptions of prescription along with other evidence concerning the parties’ intentions for the Deed transaction. The Graves and Dale argued in opposition that genuine issues of fact remained regarding Tealwood’s knowledge *402 that Dale owned the minerals and whether Dale was a validly existing and legally separate and distinct entity from the Graves. They also argued that partial summary judgment was not appropriate because of the lack of proof of a commingling of corporate and shareholder funds, the failure to follow statutory formalities, undercapitalization, the lack of separate bank accounts and bookkeeping records, and the failure to hold | firegular shareholder and director meetings. The Graves/ Dale urged the court to look to the totality of the circumstances in deciding whether to pierce the corporate veil.
The trial court simultaneously heard arguments for the exceptions of prescription and motion for partial summary judgment at a hearing on September 21, 2009. The parties submitted the affidavits and deposition testimony without the witnesses’ appearances at the trial of the exceptions. Counsel for Tealwood conceded that delic-tual fraud claims had prescribed. Additionally, the Graves acknowledged that the only claims against them which would survive the prescription exception were the contract claims. The Graves/Dale reiterated that due to the lack of a contract between Dale and Tealwood, no contract claims existed and the remaining claims against Dale should be dismissed as prescribed.
Tealwood argued that Dale’s exception of prescription, which Dale based upon its alleged lack of participation in the Deed contract, should be considered in light of Tealwood’s alter ego argument on its summary judgment motion against Dale and the Graves, collectively. Tealwood’s position therefore for both Dale’s exception and the motion for summary judgment was “that Dale Oil and Glen and Mary Graves is one in the same ... and so the breach of contract by the Graves is also extended to Dale Oil as the alter ego.”
In written reasons for judgment, the trial court sustained Tealwood’s prescription exception against Dale on the ground that there was a lack of a “contractual relationship” between the two entities. In light of this 17determination, the court denied Tealwood’s partial summary judgment against Dale as moot. The court recognized that the contractual claims by Tealwood against the Graves had not prescribed but denied Tealwood’s partial summary judgment against the Graves on the ground that “there are genuine disputed facts in this record.”
Tealwood now appeals only the judgment sustaining Dale’s exception of prescription which dismissed Dale from the action.

Discussion

All that must be considered in the peremptory exception of prescription is whether there is sufficient evidence to show that the alleged time period has run. Montgomery v. Breaux, 297 So.2d 185 (La.1974); Allstate Ins. Co. v. Fred’s, Inc., 44,508 (La.App.2d Cir.3/17/10), 33 So.3d 976, writ denied, 10-0883 (La.6/18/10), 38 So.2d 331; Reed v. Abney, 04-1928 (La.App. 1st Cir.2/10/06), 928 So.2d 585. On the trial of the prescription exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931. In the absence of evidence, the objection of prescription must be based upon the facts alleged in the petition, and all allegations thereof are accepted as true. Allstate Ins. Co. v. Fred’s Inc., supra; Louisiana Employers-Managed Ins. Co. v. Litchfield, 01-0123 (La.App. 1st Cir.12/28/01), 805 So.2d 386.
From the allegations of Tealwood’s amended petition, the central facts of Teal-wood’s claims are:
*403 |R(i) The Deed;
(ii) The Dale Servitude;
(iii) The Graves’ sole ownership and control of Dale; and
(iv) The Graves’ intent with their corporation, Dale, to deceive Tealwood regarding the sale of the Tract supposedly unencumbered by any mineral servitude (except the Baker Well mineral reservation).
In the evidentiary submissions for the exceptions for prescription, Tealwood’s motion for summary judgment, and the defendants’ opposition to that motion, a large amount of extrinsic and parol evidence was introduced, contesting the extent of ownership rights in the Tract which were intended to be conveyed in the Deed. Louisiana’s parol evidence rule in Civil Code Article 1848 provides in pertinent part:
Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act or an act under private signature. Nevertheless, in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent, or a simulation, or to prove that the written act was modified by a subsequent and valid oral agreement.
La. C.C. art. 1848.
Thus, with Article 1848 as the relevant measure, Tealwood’s claim rests on the written act under private signature which purports to convey the Tract unencumbered by the Dale Servitude. This is a cause of action in contract on the written Deed for its breach or possible enforcement. To the contrary, Graves brought forth extrinsic and parol evidence in defense of Tealwood’s contract claim to prove that the written Deed embodied a vice of consent and that the true mutual intent of the parties to the Deed was to convey the Tract subject to the Dale Servitude.
InNotably, within this contest, insofar as it concerned the Graves’ exception of prescription and Tealwood’s motion for summary judgment, two matters were correctly determined. First, the prescriptive period for Tealwood’s claim on the Deed contract was ten years, which had not accrued. Second, there were genuine issues of material fact which, upon a trial on the merits, might allow the parol and other extrinsic evidence to establish a mutual intent for the Deed at variance with its written provision regarding Tealwood’s right to the minerals which was expressly conveyed subject only to the Baker Well mineral reservation.
From our reading of the Deed alone, we agree that the Graves conveyed the Tract subject only to the limited Baker Well mineral reservation. From the Deed alone, the Tract was not to be encumbered by the Dale Servitude or any other mineral servitude, except the Baker Well mineral reservation. Thus, the existence of the Dale Servitude which was not referenced as an existing encumbrance in the Deed represents, at a minimum, a claim for breach of warranty on the Deed.[2] Nevertheless, the Graves and Dale brought forth substantial written documentation and par-ol evidence which go to the merits of whether the Deed accurately reflects the *404 parties’ mutual intent. Yet, this dispute over the parties’ mutual intent and the accuracy of the written Deed was not adjudicated by the trial court in the trial of the exceptions of prescription. Under the above cited jurisprudence, |inthe trial on the exception of prescription is limited and may not adjudicate the merits of the plaintiffs stated cause of action or, more particularly in this case, the defense that the parties’ mutual intent was not accurately reflected on the face of the Deed.
In its ruling, the trial court recognized only one cause of action against Dale, an action of fraud. The court found that Dale was a separate and distinct entity from the Graves. Therefore, Dale could not be a party to the sales contract between the Graves and Tealwood. Any fraudulent conduct in which Dale may have participated to deceive Tealwood about its purchase of the Tract, according to the trial court, would have amounted to a del-ictual claim which prescribed in one year.[3] Dale was completely dismissed from the action.
Additionally, the trial court rejected Tealwood’s “alter ego” claim against Dale, as follows:
Finally, other than a mere accusation, the record in no way supports the claims of Tealwood Properties, L.L.C. that Dale Oil Company, Inc. is the alter ego of Glen Graves or that there is any basis for what has been described in oral argument as “reverse veil piercing.”
This treatment by the trial court of the alter ego claim against Dale, in the context of an exception of prescription, was clearly not based upon the running of a prescriptive time period. If the Graves and Dale may be |, considered under a so-called “alter ego” analysis as one and the same, then the ten-year prescriptive period which the trial court found applicable to the claims against the Graves would equally apply against Dale.[4] Second, the trial court’s holding apparently was not based upon a legal determination of no cause of action. No legal analysis was stated. However, as reviewed below, we believe that this is the important legal question of this case which must be addressed. Does Tealwood have a cause of action for the disregard of Dale’s corporate personality because its sole shareholders obligated themselves under the Deed to deliver to Tealwood the right to explore for the Tract’s minerals which the Graves fraudulently or erroneously retained in Dale?[5]
*405 Finally, the trial court’s above-quoted ruling rested upon its perception of a lack of allegations or evidence in the record to support the “alter ego” claim or the claim that the Graves and Dale be considered as one in the same. Nevertheless, Teal-wood’s allegations are that (1) the Graves are the sole shareholders of Dale; (2) Mr. Graves had knowledge, individually and as president of Dale, that Dale owned the Dale Servitude |12when he executed the Deed; (3) the Graves in executing the Deed exhibited an intent to deliver ownership to the land unencumbered by the Dale Servitude; and (4) the Graves and Dale failed to deliver ownership to the Tract unencumbered by the Dale Servitude. At this stage of the proceedings, where the trial court correctly determined that the issue of the mutual intent of the parties to the Deed could not be adjudicated, the above allegations by Tealwood are presumed as true for purposes of the peremptory issue of prescription. In our opinion, those allegations, suggesting circumstantially that Mr. Graves’ intent in signing the Deed cannot be separated from Dale’s intent, state a cause of action to reform the Deed with Dale’s direct participation in the conveyance, and such cause of action has not prescribed.
Addressing the topic of the “veil-piercing” or the disregard of the corporate entity, the Louisiana Supreme Court summarized our law as follows in Smith v. Cotton’s Fleet Service, Inc., 500 So.2d 759, 762 (La.1987):
The general rule of law is that corporate entity is separate and distinct from the identity of its shareholders. La. Civ.Code art. 435. * * * The purpose of the insulation and limited liability of shareholders is to promote commerce and industrial growth by encouraging them to make capital contributions to corporations without subjecting all of their personal wealth to the risks of business. Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752 (La.1983). [Citations omitted]
The principle is well recognized, however, that the notion of legal entity may not be used to defeat public convenience, justify wrong, protect fraud, or defend crime. [Citation omitted] In each individual case, the just and reasonable limitation, if any, upon the exercise of the privilege of separate capacity is determined by balancing the policies fostered by corporate existence against the policies justifying its limitation under the particular circumstances. | ^[Citations omitted] The same factual scenario may result in recognition of a separate corporate identity for some purposes, and a disallowance of the separate corporate entity privilege for others. Glazer v. Commission on Ethics, 431 So.2d at 758. [Citation omitted] For example, the separate corporate entity privilege may not be invoked by a public official so as to use his wholly owned and controlled corporation to do that which the government code of ethics expressly commands he individually shall not do. Glazer v. Commission on Ethics, 431 So.2d at 758. But if the same corporation’s separate identity is attacked by its creditors for the purpose of imposing individual liability upon its shareholders, *406 the strong social interest in encouraging capital investment would require that the separate identity be respected absent conduct on the part of the shareholders constituting waiver of the privilege of insulation, such as their own disregard of the corporate form, or their use of the corporate form to perpetrate fraud.
The veil-piercing jurisprudence in large part concerns attempts by creditors of the corporations to defeat the limited liability protection afforded the shareholders. This is not the present situation.[6] Nevertheless, as observed by Professor Morris in the Louisiana Law Review, veil-piercing “is a flexible doctrine that can be used in any situation in which the separate personality of the corporation appears to be blocking a just result.” Glenn G. Morris, Piercing the Corporate Veil in Louisiana, 52 La.L.Rev. 271 (1991). One unique group of cases, categorized by Professor Morris as the “circumvention cases,” concerns the following:
Cases in the “circumvention” category of veil-piercing jurisprudence are strikingly different from any of the cases discussed so far; they have nothing whatever to do with the collection of a debt owed by the corporation. Rather, in the circumvention type of case the court is being asked to disregard the separate existence of a corporation in order to prevent the shareholder of the corporation from getting around some restriction on his own freedom of action. The veil is pierced in these cases to stop the shareholder from doing indirectly through a corporation what he could not do directly as an | individual, or viewed in a slightly different way, to impute to a corporation some legal disability or characteristic that, as a formal matter, is actually held by the shareholder rather than by the corporation itself. Thus, the circumvention cases do not involve issues of corporation law, as such. Rather, they raise questions about the proper interpretation of a particular statute or contract, i.e., whether the particular statute or contract in question ought to be interpreted to reach only those actions taken by the parties directly, or instead ought to be seen as reaching indirect actions as well.
Id. at 310-311.
The case of Keller v. Haas, 202 La. 486, 12 So.2d 238 (1943), involved a shareholder’s obligation to his co-owners of a tract of land after he had purchased the land at a tax sale and placed title to the land in his closely-held corporation. The plaintiff/co-owners sued the shareholder and his corporation for the recognition of their undivided three-fourths interest in the land which their co-owner, Haas, had purchased at a tax sale almost thirty years earlier. Years after the tax sale, Haas had deeded the land to his corporation. The plaintiffs’ claims against both defendants were dismissed in the district court on the peremptory exceptions of no cause and no right of action. The supreme court reversed, ruling that the plaintiffs/co-owners might yet be maintained in the co-ownership of the land with Haas, despite his tax sale purchase. Regarding the corporation’s claim of its sole ownership of the land, the court effectively disregarded the corporate entity’s claim as follows:
It is contended that the Haas Investment Company, Inc. is an innocent purchaser of the property on the faith of the *407 public records and that it is not affected by the unregistered equities of the co-owners.
It is well settled that where an individual forms a corporation of which he is the sole and only stockholder or owns such control of the stock that the act of the corporation is his own, then he may not use 11fithe screen of corporate entity to absolve himself from responsibility. [Citations omitted]
Under the allegations in the plaintiffs’ petition, the business carried on by the corporation is nothing more than a continuation of Haas’s business by the merger of his private business into a corporation of which he is the managing head and practically the sole owner. Under such circumstances, Haas is not permitted to cloak himself behind the corporate entity to shield himself from responsibility. The corporation would therefore be bound to the same extent that Haas himself is bound.
Id. at 492, 12 So.2d 238. See also, Heard v. Monroe Sand & Gravel Co., Inc., 9 La.App. 568, 121 So. 642 (La.App. 2d Cir.1928).
On the face of the Deed, the Graves, in their personal capacities, warranted a sale of the Tract unencumbered by any existing mineral servitude. Yet, they now assert that they simultaneously retained full ownership of the right to explore for minerals by virtue of their corporation’s mineral servitude and that this allows circumvention of the obligations of the Deed. If the written Deed is determined after trial to accurately reflect the parties’ mutual intent for the sale, the Graves’ intent may be imputed to their corporation, and Dale may be treated as a party to the transaction. This is a cause of action recognized in our jurisprudence, which prevents the shareholders to cloak themselves behind the corporate entity to shield themselves from the responsibility of the obligations of their sale.
This cause of action as expressed in Keller v. Haas, supra, and described by Professor Morris, supra, does not require any measure of the shareholder’s actual intent, such that bad faith or fraud must be proven. If it is determined that the Graves’ mutual intent with Tealwood was for the 1 ^conveyance of ownership of the Tract unencumbered and with the complete landowner’s right for minerals (except the limited Baker Well mineral reservation), the Graves may have simply been in error, without any actual fraudulent intent, holding a mistaken belief that the Dale Servitude no longer encumbered their Tract. With that understanding, they would have been in good faith in the execution of the Deed but may not now shield themselves and circumvent their obligations of the Deed by asserting their corporate ownership.
Finally, there are two important points of policy. Should Tealwood prevail in its claim against Dale, the policy of limited liability for shareholders is not implicated. This so-called “circumvention case” is not an attack on the shareholder’s shield from liability of the corporation’s debt. Likewise, the policy for our public records doctrine is not affected since Dale’s recorded mineral sale and lease to third parties after the time of the Deed are protected from the later reformation of the Deed. Yet, Dale still owns one-half of the mineral interest in the Tract. As between the parties, Tealwood, the Graves and Dale, the Deed may now be reformed if the substantial factual dispute over the parties’ mutual intent for the mineral interest in the Tract is ultimately adjudicated as alleged by Tealwood.

Conclusion

In summary, Tealwood has made factual allegations sufficient to state a cause of *408 action against Dale “for the specific performance of transferring the mineral rights” of the Tract to Tealwood by a reformation of the Deed. Dale’s remaining ownership affecting the minerals amounts to one-half of |17the minerals, which is the only portion which may be included in the sale to Tealwood by virtue of such reformation of the Deed. The cause of action now recognized has a prescriptive period of ten years. Accordingly, the trial court’s grant of the peremptory exception of prescription dismissing the claims against Dale is reversed. Costs of appeal are assessed to Dale.
REVERSED AND REMANDED.
MOORE, J., dissents and assigns reasons.
WILLIAMS, J., dissents for the reasons assigned by MOORE, J.

. Articles 6 and 8 of the Louisiana Mineral Code (La. R.S. 31:6 and 8) address the landowner’s exclusive right to explore and develop his property for the production of oil, gas, and other minerals occurring naturally in liquid or gaseous form.

. La. C.C. art. 2500. The warranty clauses in a deed or act of sale of real estate, warrant the buyer against any outstanding encumbrances on the property conveyed which are not declared to have existed at the time of the sale. Elder v. Flynt, 7 Pelt. 250, 1923 WL 2882 (La.App.Orleans 1923). The principle is sound that a seller should not be allowed to obligate himself to deliver and to warrant title and peaceable possession to a buyer of a thing and then by his own act or claim to derogate from, or to assert rights to the thing contrary to, his obligations. Dillon v. Morgan, 362 So.2d 1130 (La.App. 2d Cir.1978).

.This focus by the trial court and the parties on a delictual claim overlooks the Civil Code’s discussion of fraud as a vice of consent in the formation of the contract. La. C.C. arts. 1948 and 1953. "Fraud can also be pled as a basis for a contractual action." Griffin v. BSFI Western E & P, Inc., 00-2122 (La.App. 1st Cir.2/15/02), 812 So.2d 726, 734. Additionally, Article 1997 of the Civil Code gives a broader scope of damages for breach of a contract when the obligor intentionally and maliciously fails to perform his obligation. La. C.C. art. 1997. Thus, a shareholder who warrants the sale of a thing while intentionally attempting to retain ownership of the thing in his closely-held corporation, arguably falls within the purview of these matters of fraud addressed in the Civil Code.

. Reformation of an instrument is an equitable remedy which lies only to correct mistakes or errors in written instruments when such instruments, as written, do not express the true contract of the parties. It is a personal action, even when applied to real estate. Moore v. Wilson, 34,135 (La.App.2d Cir. 11/3/00), 772 So.2d 373. A personal action is subject to a liberative prescriptive period of ten years pursuant to La. C.C. art. 3499. Sonnier v. Conner, 43,811 (La.App.2d Cir. 12/3/08), 998 So.2d 344, writ denied, 09-0309 (La.4/3/09), 6 So.3d 773; Moore v. Wilson, supra.

. An issue of the applicable prescriptive time period raised by defendant’s exception of prescription essentially asks the court to identify the cause or causes of action alleged by plain *405 tiff. Our question now posed is readily apparent from Tealwood’s fact pleading, regardless of any theory of the case expressed, and the trial court and appellate court must determine the cause or causes of action. "As long as the facts constituting a claim are alleged, the party may be granted any relief to which he is entitled under the pleadings and the evidence; the 'theory of the case' doctrine, under which a party must select a theory of his case or defense and adhere to it throughout the litigation, has been abolished.” First South Production Credit Ass'n v. Georgia-Pacific, 585 So.2d 545 (La.1991).

. The Graves and Dale's argument to the trial court that Tealwood must prove commingling of corporate and shareholder funds, failure to follow statutory formalities, undercapitalization, etc., represents veil-piercing efforts to eliminate the limited liability of shareholders in a setting altogether different from the present dispute.