BROWN, Chief Judge.
| plaintiffs, hereinafter referred to as “the Coleman Group,” are purchasers of lots in the Burgundy Oaks subdivision in Shreveport, Louisiana.[1] Defendants are Longleaf Investments L.L.C. (“Longleaf’), Burgundy Oaks, L.L.C. (“Burgundy Oaks”), and Randy Jordan Construction Co., L.L.C. The property was initially owned by Longleaf, whose stockholders and officers were James A. Young, his wife, and one other person. James Young and his wife were also members and managers of Burgundy Oaks. In three transactions, in 2001, 2002, and 2005, Longleaf transferred the property at issue to Burgundy Oaks. James Young executed the deeds on behalf of both entities. In the deeds “(Longleaf) does hereby reserve unto itself all rights, title and interest in and to any oil, gas and/or other minerals located over or under the (property).” Significantly, the person who drafted and notarized all three deeds was Carter Rogers.
Plaintiffs are homeowners who purchased their lots in the subdivision from Burgundy Oaks and builders who had acquired the lots from Burgundy Oaks; Randy Jordan Construction is one such builder. These sales occurred at various times from 2002 to 2007. The habendum et ten-endum clause in their deeds declares that the vendor does “GRANT, BARGAIN, SELL, CONVEY AND DELIVER, with full guarantee of title, and with complete transfer and subrogation of all rights and actions of warranty against all former proprietors of the property herein conveyed ...” According to ^plaintiffs, at no time did the sellers, the closing agents or attorney disclose to the purchasers that they were getting less than full title to the property, i.e., that the mineral rights were not being transferred.
The Coleman Group filed suit against defendants, asserting that Longleafs alleged reservation of minerals in its deeds to Burgundy Oaks was not disclosed to any of plaintiffs prior to their purchases, and that the failure of the defendants to disclose this mineral reservation and to advise plaintiffs that the sale of the lots was without mineral rights constituted fraud, a violation of the Louisiana Unfair Trade Practices Act, breach of warranty, negligent misrepresentation, and a breach of *354 duty owed to plaintiffs by defendants. In the alternative, plaintiffs sought recovery under the theory of unjust enrichment.
On April 28, 2008, Camterra Resources Partners, Ltd. secured an oil, gas and mineral lease from Longleaf covering the property at issue for $100 and other valuable considerations and a one-fourth royalty. Plaintiffs also sued Camterra Resources Partners, Ltd. to rescind its lease and for royalties and other payments made to Longleaf. Camterra’s motion for summary judgment, based on their reliance of the public record, was granted and all claims against it were dismissed without prejudice. They are not a part of this appeal.
Defendants, Longleaf, Burgundy Oaks, and Randy Jordan Construction, filed an answer and, following discovery, a motion for summary judgment urging their entitlement to judgment as a matter of law in that there was no rule or principle of law which supported plaintiffs’ ¡¡¡claims, and there were no issues of genuine fact. A hearing was held on June 14, 2010, and the trial court granted defendants’ motion for summary judgment and dismissed plaintiffs’ claims with prejudice. It is from this judgment that plaintiffs have appealed. We reverse and remand.

Discussion

Louisiana Code of Civil Procedure Article 966 provides that plaintiff or defendant in the principal or any incidental action may move for summary judgment for all or part of the relief sought and that summary judgment shall be rendered forthwith “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.02/29/00), 755 So.2d 226. Our review of a grant or denial of summary judgment is de novo. Id.; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991).
Filed in support of and in opposition to defendants’ motion for summary judgment are affidavits, answers to interrogatories and relevant documents. In their affidavits, plaintiffs state that the closing agent and attorney were retained by the seller. The three transfers of the property from Longleaf to Burgundy Oaks contained mineral reservations and all were drafted and notarized by Carter Rogers. The Articles of Organization of Burgundy Oaks L.L.C. was notarized by Carter Rogers. Defendants’ answers to interrogatories identify Rogers as a witness and title examiner. | .¡Rogers acted as the closing attorney who examined title in most of the deeds to plaintiffs. We note, however, that Rogers is not an attorney.[2]
Carter Rogers filed an affidavit in support of defendants’ motion for summary judgment in which he states that he is “co-owner/manager (of) Mosely-Rogers Title Co.” and that he has 30 years’ experience in checking residential titles and expertise in title documents relating to residential properties. In his affidavit, Rogers states, “Prior to 2008 and the publicity surrounding the Haynesville Shale, mineral rights were not typically mentioned in residential deeds in Caddo Parish and purchasers of homes seldom inquired about mineral rights in connection with or at the time of closing; ... It is not customary for residential deeds to include a reference to minerals or prior mineral reservations.”
*355 A similar affidavit was filed by an attorney, C. Gary Mitchell, who had 86 years’ experience in checking residential titles.
The deed from Burgundy Oaks to plaintiff Roger Colemen states that “(The sale is) SUBJECT To the easements, set back requirements and other real rights running with the land as shown on the above referenced plat of survey; and FURTHER SUBJECT TO the Declaration of Covenants, Conditions and Restrictions, as amended, filed in the record of Caddo Parish, Louisiana.” (Emphasis added).
The deed to plaintiff Eddie Wilson has no “subject to” language at all. The remaining deeds, which are primarily notarized by Carter Rogers, |fistate that “[T]he property described herein is conveyed subject to all recorded servitudes, restrictions, rights-of-way and easements.”

Applicability of Sinyle Business Enterprise Doctrine

According to plaintiffs, the trial court erred in failing to find that there was a genuine issue of material fact as to whether Longleaf and Burgundy Oaks should be considered a single business enterprise such that the conveyances from Burgundy Oaks to the individual plaintiffs transferred all of the property rights held by both Longleaf and Burgundy Oaks, which would include the mineral rights purportedly reserved by Longleaf in its transfers to Burgundy Oaks.
The single business enterprise doctrine is a theory for imposing liability where two or more business entities act as one. Brown v. ANA Insurance Group, 07-2116 (La.10/14/08), 994 So.2d 1265. Generally, under this doctrine, when corporations integrate their resources in operations to achieve a common business purpose, each business may be held liable for wrongful acts done in pursuit of that purpose. Brown, supra; Brown v. Automotive Casualty Insurance Co., 98-2169 (La. App. 1st Cir.10/07/94), 644 So.2d 723, writ denied, 94-2748 (La.01/06/95), 648 So.2d 932.
Whether or not two or more entities comprise a single business enterprise is a factual determination to be decided by the trier of fact which is subject to the manifest error standard of review. Town of Haynesville, Inc. v. Entergy Corp., 42,019 (La.App.2d Cir.05/02/07), 956 So.2d 192, writ denied, 07-1172 (La.09/21/07), 964 So.2d 334. However, the court | ^cannot make credibility determinations on a motion for summary judgment and must assume that all the affiants are credible. Independent Fire Ins. Co., supra. The court must draw those inferences from the undisputed facts which are most favorable to the party opposing the motion. Id.
In Tealwood Properties, L.L.C. v. Succession of Graves, 45,975 (La.App.2d Cir.04/27/11), 64 So.3d 397, a case involving a mineral reservation in a corporation owned by a seller of the land, this court spoke about veil-piercing as follows:
The veil-piercing jurisprudence in large part concerns attempts by creditors of the corporations to defeat the limited liability protection afforded the shareholders. This is not the present situation. Nevertheless, as observed by Professor Morris in the Louisiana Law Review, veil-piercing “is a flexible doctrine that can be used in any situation in which the separate personality of the corporation appears to be blocking a just result.” Glenn G. Morris, Piercing the Corporate Veil in Louisiana, 52 La. L.Rev. 271 (1991).
In that law review article, Professor Morris categorized a unique group of cases as “circumvention cases,” and wrote:
*356 Cases in the “circumvention” category of veil-piercing jurisprudence are strikingly different from any of the cases discussed so far; they have nothing whatever to do with the collection of a debt owed by the corporation. Rather, in the circumvention type of case the court is being asked to disregard the separate existence of a corporation in order to prevent the shareholder of the corporation from getting around some restriction on his own freedom of action. The veil is pierced in these cases to stop the shareholder from doing indirectly through a corporation what he could not do directly as an individual, or viewed in a slightly different way, to impute to a corporation some legal disability or characteristic that, as a formal matter, is actually held by the shareholder rather than by the corporation itself. Thus, the circumvention cases do not involve issues of corporation law, as such. Rather, they raise questions about the proper interpretation of a particular statute or contract, i.e., whether the particular statute or contract in question ought to be ^interpreted to reach only those actions taken by the parties directly, or instead ought to be seen as reaching indirect actions as well.
Id. at 310-311.
In Tealwood, this court concluded that: On the face of the Deed, the Graves, in their personal capacities, warranted a sale of the Tract unencumbered by any existing mineral servitude. Yet, they now assert that they simultaneously retained full ownership of the right to explore for minerals by virtue of their corporation’s (Dale Oil Corporation) mineral servitude and that this allows circumvention of the obligations of the Deed. If the written Deed is determined after trial to accurately reflect the parties’ mutual intent for the sale, the Graves’ intent may be imputed to them corporation, and Dale may be treated as a party to the transaction. This is a cause of action recognized in our jurisprudence, which prevents the shareholders to cloak themselves behind the corporate entity to shield themselves from the responsibility of the obligations of their sale.
In brief, defendants argue this court in Haynesville stated that the court is required to look at the substance of the corporations rather than the form. They claim that plaintiffs offered no proof about the substance of Longleaf or Burgundy Oaks other than common ownership. A similar argument was made in Tealwood. They claimed that Tealwood must prove commingling of corporate and shareholder funds, failure to follow statutory formalities, undercapitalization, etc. We found that such requirements represented veil-piercing efforts to eliminate the limited liability of shareholders in a setting altogether different from the present dispute. The same is true in our case.
This is a summary judgment motion, not a trial. The trial court did not address this veil-piercing issue in its oral reasons for granting summary judgment. Plaintiffs alleged that Longleaf and Burgundy Oaks were controlled by the same person, operated out of the same office, shared ^common managers and directors, shared a common administration and had a centralized accounting system. Inferences most favorable to plaintiff drawn from the undisputed facts suggest that the conveyances between the two entities were made to disguise the withholding of the mineral rights from potential purchasers such as plaintiffs. Exhibits attached to defendants’ Answers to Interrogatories included Articles of Organization listing the ownership and management. The three transfers between Longleaf and Burgundy Oaks were drafted by Mosely-Rogers Title Co. who thereafter drafted the deeds from *357 Burgundy Oaks to plaintiffs. The affidavits filed with the summary judgment motion from the two experts show that these types of transfers between these commonly owned entities with the mineral reservation was a common practice in subdivision development.[3] The affidavits specifically stated that the mineral reservation would not be disclosed in the later transfers nor would the buyers be informed of the mineral reservation. It is also clear that the sellers furnished the agent/attorney for the buyers. The closing attorney, Mosely-Rogers Title Co., who was the attorney for the seller, did the title examination for the buyers but according to Carter Rogers’ affidavit he believed he had no obligation to disclose to the buyers the existence of a mineral reservation. Clearly a question of material fact exists as to applicability of the single business enterprise doctrine.

\^Plaintiffs’ Fraud, Unfair Trade Practices and Warranty Claims

Plaintiffs assert that defendants committed fraud/violated Louisiana’s unfair trade practices law/breached a warranty when they entered into negotiations with plaintiffs and failed to mention that the mineral rights to the lots purchased by plaintiffs were reserved by Longleaf in previous transactions between Longleaf and Burgundy Oaks involving the subject properties.
Defendants contend that, pursuant to the public records doctrine, plaintiffs are charged with knowledge of everything the public records show pertaining to the lots they purchased and because the deeds of transfer between Longleaf and Burgundy Oaks, which contain the mineral rights reservations, were duly and properly recorded prior to any purchases by plaintiffs, them claims have no merit. Plaintiffs had an agent/attorney who represented to them that he had checked the public records and found the title to be good. This agent/attorney knew of the mineral reservations, particularly because he drafted the deeds including the reservations, but did not disclose this to plaintiffs.
The seller warrants, inter alia, the buyer against encumbrances on the things which were not declared at the time of the sale. La. C.C. art. 2500. The jurisprudence is that a seller should not be allowed to obligate himself to deliver and to warrant title and peaceable possession to a buyer of a thing and then by his own act or claim to derogate from, or to assert rights to the hnthing contrary to, his obligations. Tealwood, supra; Dillon v. Morgan, 362 So.2d 1130 (La.App. 2d Cir.1978).[4]

Conclusion

The trial court’s grant of summary judgment is reversed, and this case is remanded for further proceedings consistent with this opinion. All costs are assessed against defendants.

. Plaintiffs are Rogers Coleman, Tiwana Coleman, Edward E. Williams, Daniel E. Perkins, Georgina J. Perkins, Willie L. George, August L. George, Craig J. Ferrier, Kayla Mclnnis Ferrier, Salilda Taylor, Morris R. Mclnnis, Larla Mclnnis, Donald B. Howard, Linda Howard, James Gibson, Tracey Gibson, Eddie B. Wilson, Clara H. Wilson, David F. Feudale and Michele L. Feudale.

. See McGuire v. Mosley Rogers Title Company, L.L.C., 43,554 (La.App.2d Cir.09/17/08), 997 So.2d 23.

. In his affidavit, Carter Rogers appeared to be an attorney.

. Defendants in a brief paragraph argued prescription as to the Louisiana Unfair Trade Practices Act (La. 51:1401, et seq.). The trial court did not address this question, and the record is not sufficient for this court to address it.